Daniel Lee HINSBERGER, Appellant,

v.

STATE of Alaska, Appellee.

No. S–10130.

Supreme Court of Alaska.

Aug. 23, 2002.

Carol A. Brenckle, Kenai, for Appellant.

Venable Vermont, Jr., Assistant Attorney General, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before: FABE, Chief Justice, EASTAUGH, BRYNER, and CARPENETI, Justices.

*OPINION*

CARPENETI, Justice.

# I. INTRODUCTION

Daniel Hinsberger brought suit against the State of Alaska for medical negligence and negligent infliction of emotional distress (NIED) for treatment Hinsberger received while incarcerated. The superior court granted the state's motion for partial summary judgment on the issue of medical negligence because the state submitted expert testimony that the care provided to Hinsberger met the appropriate standard of care, and Hinsberger did not rebut that evidence. The superior court then granted another motion for partial summary judgment in favor of the state on the NIED claim because Hinsberger would be unable to establish breach of a preexisting duty in light of the summary judgment on the medical negligence claim. Because Hinsberger failed to demonstrate how he would prove breach of a preexisting duty, we affirm the superior court's grant of summary judgment.

# II. FACTS AND PROCEEDINGS

## A. Facts

On December 20, 1993, in the course of a physical altercation with his ex-wife, Daniel Hinsberger was kneed in the groin and he passed blood in his urine for about two days. He was charged with assault in the fourth degree in connection with the incident, and in January 1994 he was taken into custody and transported to the Wildwood Pretrial Facility (Wildwood). Hinsberger was examined by Wildwood medical staff for complaints of severe pain on his right side and blood in his urine the day he was incarcerated. Hinsberger was released from custody the next day and the criminal charges were later dismissed. Hinsberger was again incarcerated a few days later for a different offense and transported to Wildwood.

On January 11 Hinsberger complained of severe pain on his right side and was seen by Wildwood medical staff around 8:30 a.m. Hinsberger was transported to Central Peninsula General Hospital (Central Hospital) where he was seen by Dr. Cynthia Milbrant at 11:30 a.m. Hinsberger was then admitted to Central Hospital under the care of Dr. Gonzalo Fraser. That same day, an intravenous pyelogram (IVP) was obtained that revealed an obstruction. Hinsberger was released on January 12 and transported back to Wildwood. Also on January 12 he was transferred to Cook Inlet Pretrial Facility (Cook Inlet) in Anchorage so that he could receive medical care. That same day, Hinsberger was seen by Cook Inlet's medical personnel at approximately 8:00 p.m.

On January 14 Hinsberger was seen by Dr. Kevin Tomera in Anchorage. Dr. Tomera diagnosed Hinsberger with kidney stones that would probably pass in one month and recommended that Hinsberger drink a lot of fluids. Dr. Tomera advised Hinsberger to return if the kidney stones did not pass in one month because Hinsberger would need an IVP and probably stone manipulation. On the same day, Hinsberger was transferred to Homer where he went to the emergency room and was seen by Dr. Paul Eneboe around 9:00 p.m. Hinsberger was then transported to Wildwood and was seen by medical staff after his arrival.

Hinsberger claims that his pain medications on January 18 were inappropriately interrupted. Then, on January 19 Hinsberger was placed in medical segregation per Dr. Fraser's orders. Hinsberger was placed back on his pain medication on January 20. On January 24 Hinsberger was transferred back to Cook Inlet where he submitted his first request for health care that evening. Hinsberger filed a second request for health care on January 26. Hinsberger also claims to have filed on the same day a prisoner grievance that was returned to him because he used the wrong form. Hinsberger filed his third request for health care later that same day. On January 30 Hinsberger filed his fourth request for health care. Hinsberger filed a fifth request for health care on February 3. Hinsberger also claims to have filed a second prisoner grievance on February 3 that was again returned to him because it was filed on the wrong form. The State of Alaska denies this claim.

On February 10 Hinsberger filed his sixth and seventh requests for health care. Hinsberger was seen by Dr. Tomera and received

a follow-up IVP on February 11. Dr. Tomera performed surgery on Hinsberger on February 15 in which a stent was inserted to alleviate the right renal obstruction to Hinsberger's kidney. Hinsberger required follow-up surgery on February 25 in which Dr. Tomera "performed a right pyeloplasty to alleviate the right ureteral pelvic junction obstruction." Hinsberger was hospitalized until March 2 when he was discharged and transported back to Cook Inlet.

Hinsberger claims that he slipped on a piece of food on the floor on March 4 after his return to Cook Inlet and that he experienced a burning and ripping sensation in the area of the surgical incision. He also claims to have slipped on a wet floor on March 5 causing him to experience considerable pain in the abdominal area. Hinsberger claims that he woke up in excruciating pain on March 6 and when he contacted the shift supervisor to request medical attention he was placed in the "drunk tank." On March 9 Hinsberger was transferred back to Wildwood and ultimately released on March 11.

### B. Proceedings

In January 1996 Hinsberger brought suit against the State of Alaska alleging negligence due to delays in medical treatment and negligent infliction of emotional distress. The state moved for partial summary judgment on the claim of medical negligence in November 2000. The state attached the affidavit of Dr. Greg O. Lund to the motion. In the affidavit, Dr. Lund concluded that Hinsberger's condition was appropriately managed by the state and that Hinsberger received the prescribed medications in an appropriate fashion. Dr. Lund summarized that all of the care provided to Hinsberger during his incarceration was "appropriate, timely, and well within the standard of care." It appears from the record that Hinsberger did not oppose this motion. The superior court granted the state's motion for partial summary judgment on the issue of medical negligence.

In January 2001 the state moved for partial summary judgment on the remaining claim of NIED. The state argued that Hinsberger was no longer able to claim NIED as a result of physical injury because the superior court granted summary judgment in favor of the state on the claim of medical negligence. In the absence of any physical injury caused by the state, the state argued that Hinsberger's only claim was that NIED resulted from a breach of a preexisting duty owed to him by the state. However, the state asserted, Hinsberger would be unable to establish the breach of a preexisting duty because the grant of summary judgment in favor of the state on the issue of medical negligence established that the state had met the requisite standard of care.

Hinsberger opposed the motion, arguing that the issue was not one of medical negligence but whether Hinsberger was provided with the health care services required to prevent or alleviate pain and suffering. The superior court granted partial summary judgment in favor of the state on the issue of NIED. Because the superior court disposed of all the claims on motions for summary judgment, the court entered final judgment in favor of the state.

Hinsberger appeals only the superior court's grant of the state's motion for partial summary judgment on the NIED claim. He does not appeal the earlier grant of partial summary judgment in the state's favor on the issue of medical negligence.

### III. STANDARD OF REVIEW

We review an appeal from summary judgment *de novo*.[1] "A superior court's grant of summary judgment must be affirmed if the evidence in the record fails to disclose a genuine issue of material fact and the moving party is entitled to judgment as a matter of law."[2] "All reasonable factual inferences must be drawn in favor of the party opposing summary judgment."[3] If we must answer questions of law, we will "adopt the

---

1. *Ganz v. Alaska Airlines, Inc.,* 963 P.2d 1015, 1017 (Alaska 1998).

2. *Johnson v. Olympic Liquidating Trust,* 953 P.2d 494, 496 (Alaska 1998).

3. *Id.*

rule of law which is most persuasive in light of precedent, reason and policy."[4]

## IV. DISCUSSION

**The Superior Court Did Not Err in Granting the State's Motion for Partial Summary Judgment.**

■ Hinsberger argues that the state failed to provide him with required medical services to prevent his pain and suffering. He asserts that the state failed to provide prescription medications at the appropriate intervals and that his requests for medical treatment were denied because he failed to file the proper form. Because the state owed Hinsberger a duty to provide him with medical care during his incarceration, he argues that he falls under the preexisting duty exception to the rule barring recovery for NIED without physical injury.

In *Hancock v. Northcutt*,[5] we held that damages are not awarded for NIED in the absence of physical injury.[6] However, we have allowed two exceptions to this rule: the preexisting duty exception and the bystander exception.[7] Hinsberger relies on *Chizmar v. Mackie*[8] in arguing that he has a viable claim for NIED. In *Chizmar*, we held that a plaintiff can recover for emotional distress caused by mere negligence "where the defendant owes the plaintiff a preexisting duty."[9]

The state owed Hinsberger a duty to provide him with necessary medical care under AS 33.30.011.[10] But establishing that the state owed Hinsberger a duty is only the first step in the analysis. The next step is to consider whether the duty was breached. We have held that "[i]n order to maintain a NIED claim there must be a breach of a duty arising out of a pre-existing contractual or fiduciary relationship."[11]

Hinsberger did assert a claim for medical negligence, claiming that he was injured because of the state's delay in providing him with medical treatment, but his claim was rejected on the state's motion for partial summary judgment.

The state moved for partial summary judgment on the negligent medical care claim, attaching the affidavit of Dr. Greg O. Lund, a urologist certified by the American Board of Urology, with its motion. Dr. Lund opined that Hinsberger received all of his medications as prescribed and that he received treatment in a timely manner, "well within the standard of care." Hinsberger failed to respond to the state's motion for partial summary judgment. The superior court granted the state's motion for partial summary judgment on the issue of medical negligence. Because Hinsberger could not make a separate claim for NIED based on breach of a preexisting duty where the superior court previously found "that there was no medical negligence," the superior court properly granted the state's motion for summary judgment on the NIED claim.

We note that the state was not entitled to summary judgment on its first motion, concerning medical negligence, merely because Hinsberger failed to respond to the motion.

**4.** *Ganz*, 963 P.2d at 1017 (internal quotations omitted).

**5.** 808 P.2d 251 (Alaska 1991).

**6.** *Id.* at 257.

**7.** *See Tommy's Elbow Room, Inc. v. Kavorkian*, 727 P.2d 1038, 1043 (Alaska 1986); *Chizmar v. Mackie*, 896 P.2d 196, 203 (Alaska 1995). The bystander exception is not applicable to the present case as Hinsberger is not claiming that he suffered emotional distress from witnessing harm to a close relative.

**8.** 896 P.2d 196 (Alaska 1995).

**9.** *Id.* at 203.

**10.** AS 33.30.011, titled "Duties of commissioner," states in relevant part:

> The commissioner shall
> . . . .
> (4) provide necessary
> (A) medical services for prisoners in correctional facilities or who are committed by a court to the custody of the commissioner, including examinations for communicable and infectious diseases. . . .

Because there is a statutory duty imposed on the state, it is unnecessary to analyze the duty under the common law. *See Karen L. v. Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 953 P.2d 871, 875 n. 9 (Alaska 1998); *M.A. v. United States*, 951 P.2d 851, 853 (Alaska 1998).

**11.** *Caudle v. Mendel*, 994 P.2d 372, 376 (Alaska 1999).

We have held that a movant does not have a right to summary judgment merely because the non-moving party fails to respond.[12] Here, the state offered the affidavit of Dr. Lund that the treatment offered to Hinsberger met the applicable standard of care. Dr. Lund's affidavit addressed not only the competency of medical care that Hinsberger received from physicians and nurses but also the appropriateness and timeliness of Department of Corrections's responses to Hinsberger's various complaints and requests for medication or additional treatment. Hinsberger failed to controvert Dr. Lund's opinion with expert affidavits. Therefore, the superior court found that the state did not breach its duty to Hinsberger in providing medical care.

This case is similar to Kendall v. State, Division of Corrections.[13] In Kendall, two defendants moved for summary judgment on a medical malpractice claim offering an advisory panel report in which the experts stated that Kendall's care had been proper.[14] The superior court granted summary judgment in favor of the defendants.[15] We affirmed the grant of summary judgment holding that, once the defendants presented an expert opinion that Kendall was properly cared for, the burden shifted to Kendall to demonstrate how she would prove her case.[16] We stated that the "defendants' motion was sufficient to establish the absence of a genuine issue as to negligence" and Kendall "presented no expert affidavits and did not show, based on the evidence that was presented, that a reasonably arguable case of medical negligence existed."[17]

Hinsberger has not appealed the grant of summary judgment on the issue of medical negligence. Because the superior court ruled that the state did not breach its duty as a matter of law, Hinsberger will be unable to prove a claim for NIED, as he will be unable to establish a breach of the preexisting duty.[18]

■ Hinsberger also claims that his requests for medical attention were ignored by the state because he used the wrong form or failed to follow the appropriate procedure. But he fails to show that the state breached any preexisting duty by these acts. And he fails to offer any explanation, even if the allegations are true, of a link between these actions and his claim for NIED. In short, Hinsberger fails to allege causation.

■ Finally, Hinsberger argues that he is owed a duty under Cleary v. Smith[19] that is separate and distinct from the duty owed to him under AS 33.30.011(4). Hinsberger argues that Cleary, which involved a court-sanctioned settlement agreement,[20] imposes a duty on the state to provide medical services that are comparable in quality to those available to the general public and which are required to prevent or alleviate pain and suffering. In contrast, AS 33.30.011(4) requires the state to provide necessary medical services to prisoners. Even if the Cleary settlement agreement did impose an additional duty on the state, Hinsberger has failed to show how this duty was breached in light of Dr. Lund's affidavit and the case law discussed above.

## V. CONCLUSION

Because Hinsberger did not claim that he suffered any physical injury as the result of the state's alleged negligent infliction of emotional distress upon him, he was required to show that the state had a preexisting duty to him that it breached. The source of such a duty is AS 33.30.011, requiring the Depart-

12. Martinez v. Ha, 12 P.3d 1159, 1162 (Alaska 2000).

13. 692 P.2d 953 (Alaska 1984).

14. Id. at 954.

15. Id.

16. Id. at 955.

17. Id.

18. Silvers v. Silvers, 999 P.2d 786, 793 (Alaska 2000) (stating that "[a]s with any negligence case, the plaintiff must establish (1) a duty of care; (2) breach of the duty; (3) causation; and (4) harm").

19. No. 3 AN–81–5274 Civ. (Alaska Super., December 21, 1990).

20. Id. at 1.

ment of Corrections to provide necessary medical services for prisoners in jail. But the superior court had already correctly ruled that the state had not breached its duty to provide necessary medical services. Therefore, Hinsberger failed to show how he could prove his NIED case following the grant of summary judgment to the state on the issue of medical negligence. For this reason, we AFFIRM the superior court's grant of summary judgment in the state's favor on the issue of NIED.

MATTHEWS, Justice, not participating.