Kevin and Yvette O'CONNOR, Appellants,

v.

STAR INSURANCE COMPANY,
Appellee.

No. S–10500.

Supreme Court of Alaska.

Dec. 26, 2003.

---

William R. Satterberg, Jr., The Law Offices of William R. Satterberg, Jr., Fairbanks, for Appellants.

John C. Pharr, Law Offices of John C. Pharr, Anchorage, for Appellee.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

## OPINION

EASTAUGH, Justice.

## I. INTRODUCTION

Star Insurance Company issued a licensing surety bond to a general contractor under AS 08.18.071. Kevin and Yvette O'Connor sued Star alleging, among other things, that Star tortiously breached a duty they claimed Star owed them to impartially investigate their claim against the contractor. The superior court ruled that the undisputed facts showed that Star acted reasonably. It consequently granted summary judgment to Star on the O'Connors' tort claims against Star. The O'Connors appeal. We affirm the summary judgment, because the O'Connors have not established that Star owed them an actionable tort duty to investigate their claim against the contractor.

## II. FACTS AND PROCEEDINGS

Contractors must obtain a state-issued certificate of registration to perform contracting work in Alaska.[1] Alaska Statute 08.18.071

---

1. At all pertinent times, AS 08.18.011 provided in part that "[a] person may not submit a bid or work as a contractor until that person has been issued a certificate of registration by the [Department of Community and Economic Development]." The legislature amended section .011 in

requires general contractors to file either a $10,000 cash deposit or a $10,000 surety bond with the Commissioner of the Department of Community and Economic Development before receiving a certificate of registration.[2] Under AS 08.18.071(a)(3), the bond is conditioned on payment of all amounts "adjudged" against the contractor for negligent or improper work, or for breach of contract. Per AS 08.18.071(b), the cash deposit has the same implicit purpose. We refer here to a surety bond satisfying AS 08.18.071 as a "licensing bond."

Homestead Builders, Inc. was a construction contractor licensed to do business in Alaska. It obtained a $10,000 licensing bond from Star Insurance Company to satisfy AS 08.18.071. The bond was in effect from February 11, 1997 to February 11, 2000. In its bond application Homestead Builders agreed to indemnify, defend, and hold harmless Star against any monetary loss due to a claim or demand against the bond, and against any legal expenses incurred by Star relating to the bond.

Kevin and Yvette O'Connor hired Homestead Builders and one of Homestead Builders's owners, Ken Born, to perform construction work on their home. The work occurred in 1997 and 1998. The O'Connors were unhappy with the work and sued Homestead Builders, Born, and Star in superior court, alleging that the construction "was deficient, unworkmanlike, and in violation of acceptable building standards, code requirements, and various promises [made] . . . with respect to the quality of construction." The complaint sought damages exceeding $50,000 and al-

leged that Star was liable to the O'Connors to the full extent of the licensing bond Star issued to Homestead Builders.

After Homestead Builders and Born filed an answer to the O'Connors' complaint, Star exercised its rights under the indemnity agreement Homestead Builders signed and tendered defense of the O'Connors' suit to Homestead Builders. Homestead Builders's attorney then entered an appearance for Star and filed on Star's behalf an answer to the O'Connors' complaint.

Two other claimants, whose claims were unrelated to the O'Connors' suit, also filed claims against the licensing bond Star issued to Homestead Builders. Homestead Builders and Born filed for bankruptcy July 28, 2000.

Star then filed a complaint for interpleader in state district court naming the O'Connors among the defendants. Star's interpleader complaint alleged that the multiple claims against the licensing bond exceeded the value of the bond. Star's complaint asked that Star be permitted to pay $10,000 into the registry of the court, and sought an order exonerating the bond.

The O'Connors filed an answer to Star's interpleader complaint, and claimed that they should be awarded all interpled sums. The O'Connors also counterclaimed, alleging that Star, as the surety, owed them "a duty under Alaska law to fairly, fully, and impartially investigate the claim of [the] O'Connors and all other[ ] [claims] against the bond." Their counterclaim alleged that Star failed to inves-

---

2003. Ch. 134, § 4, SLA 2003. The 2003 amendment inserted the words "as a contractor" after the word "registration" in the quoted passage.

2. At all pertinent times, AS 08.18.071 provided in part:

(a) *Each applicant shall, at the time of applying for a certificate of registration, file with the commissioner a surety bond* running to the state conditioned upon the applicant's promise to pay all
    (1) taxes and contributions due the state and political subdivisions;
    (2) persons furnishing labor or material or renting or supplying equipment to the applicant; and

(3) amounts that may be adjudged against the applicant by reason of negligent or improper work or breach of contract in the conduct of the contracting business or by reason of damage to public facilities occurring in the course of a construction project.
(b) *If the applicant is a general contractor, the amount of the bond shall be $10,000;* if the applicant is a mechanical or specialty contractor, the amount of the bond shall be $5,000. *In lieu of the surety bond the applicant may file with the commissioner a cash deposit* or other negotiable security acceptable to the commissioner *in the amount specified for the bonds.* (Emphasis added.) The legislature amended section .071 in 2003. Ch. 134, §§ 4, 5, SLA 2003. The amendment is not material to the present dispute.

tigate their claim despite clear notification, and that Star's failure to investigate was in bad faith. The O'Connors later argued that Star owed them a duty of good faith and fair dealing, and that the breach of that duty entitled the O'Connors to maintain· a bad faith tort action against Star.

Star moved for summary judgment on the O'Connors' bad faith counterclaim in the interpleader action. Star argued that the tort of bad faith did not exist in the licensing bond context. It argued alternatively that even if a bad faith cause of action did exist in the licensing bond context, Star did not breach a duty it owed to the O'Connors.

After filing their counterclaim in the district court interpleader action, the O'Connors filed an amended complaint in their superior court action against Homestead Builders, Born, and Star. The amended complaint added "Count II," which asserted a bad faith claim against Star for its alleged failure to "fairly, fully, and impartially investigate the claim of [the] O'Connors and all other[ ] [claims] against the bond." The O'Connors' counterclaim in the interpleader action and Count II in their amended complaint both alleged that Star owed the O'Connors a duty to investigate the third-party claims against the licensing bond Star issued to Homestead Builders, and that Star breached this duty in bad faith by not investigating the O'Connors' claim against Homestead Builders.

Star's interpleader action was consolidated in the superior court with the O'Connors' original suit against Homestead Builders, Born, and Star. Star then moved for summary judgment on Count II of the O'Connors' amended complaint. Star argued that the O'Connors could not demonstrate a genuine issue of material fact as to the O'Connors' tort damages claim against Star, or. as to Star's liability for punitive damages.

Star later amended its interpleader complaint to add two other defendants who had made claims against the licensing bond Star issued to Homestead Builders.

The superior court granted summary judgment to Star on the O'Connors' bad faith counterclaim to Star's interpleader complaint. The superior court ruled that the tort of bad faith existed in the context of licensing bonds, but that the undisputed facts showed that Star did not breach a duty it owed to the O'Connors. The superior court later granted summary judgment to Star on Count II of the O'Connors' amended complaint which, like the O'Connors' interpleader counterclaim, alleged a bad faith failure to investigate.

The O'Connors appeal the grants of summary judgment on their bad faith claims.

## III. DISCUSSION

### A. Standard of Review

We apply our independent judgment when reviewing a lower court's interpretation of statutes and other related legal questions.[3] We review rulings on questions of fact under the clearly erroneous standard.[4] We "may affirm the superior court on any basis appearing in the record." [5]

### B. The O'Connors Have Not Established the Existence of an Actionable Tort Duty.

The superior court held that Star acted reasonably and thereby discharged the duty it owed the O'Connors. But although the superior court granted summary judgment to Star on that ground, it also held that "the tort of bad faith exists in the licensing bond context."

The O'Connors have appealed the ruling that Star acted reasonably. The issue whether Star owed the O'Connors ·an actionable tort duty was not initially briefed on appeal. We consequently ordered supplemental briefing on the question whether licensing bond

**3.** *Cook Inlet Keeper v.. State,* 46 P.3d 957, 961 (Alaska 2002); *Fancyboy v. Alaska Vill. Elec. Co-op., Inc.,* 984 P.2d 1128, 1132 (Alaska 1999).

**4.** *Dunn v. Dunn,* 952 P.2d 268, 270 (Alaska 1998) (quoting *R.F. v. S.S.,* 928 P.2d 1194, 1196 n. 2 (Alaska 1996)).

**5.** *Far N. Sanitation, Inc. v. Alaska Pub. Utils. Comm'n,* 825 P.2d 867, 869 n. 2 (Alaska 1992).

sureties owe a duty of good faith and fair dealing to parties who have negligence claims against bonded contractors.

■ In holding that the tort of bad faith existed in the licensing bond context, the superior court relied on our decision in *Loyal Order of Moose v. International Fidelity Insurance Co.*[6] The superior court correctly noted that all contracts in Alaska contain an implied covenant of good faith and fair dealing as a matter of law.[7] It then observed, citing *Loyal Order of Moose*, that a covenant of good faith and fair dealing may give rise to a tort claim for bad faith.[8] The superior court relied on our holding in *Loyal Order of Moose* that "an implied covenant of good faith and fair dealing exists between a surety and its obligee on payment and performance bonds" in the construction context.[9] The superior court treated licensing bonds like payment or performance bonds, and concluded that Star owed the O'Connors a duty of good faith and fair dealing and that breach of that duty would give rise to a tort action for bad faith.

The superior court then quoted our statement in *Loyal Order of Moose* that a "surety may satisfy its duty of good faith to its obligee by acting reasonably in response to a claim by its obligee, and by acting promptly to remedy or perform the principal's duties where default is clear."[10] The superior court held that the undisputed facts showed that Star acted reasonably. The court ruled that Star acted reasonably (1) in tendering defense of the O'Connors' claim to Homestead Builders under the terms of Star's indemnity agreement with Homestead Builders; (2) in not paying on the bond before Homestead Builders's negligence was established; and (3) in filing an interpleader action to resolve the multiple claims against the bond after Homestead Builders filed for bankruptcy. It consequently granted summary judgment to Star on the O'Connors' bad faith tort claims.

■ The O'Connors argue that Star owed them a duty to "independently investigate" their claim against Homestead Builders, and that Star breached this duty by tendering to Homestead Builders the defense of the O'Connors' claim without conducting its own investigation. In opposing Star's motion for summary judgment, the O'Connors argued in the superior court that "not once did Star make a reasonable *independent* investigation into [the O'Connors'] claims." (Emphasis in original.) Similarly, the O'Connors argued that

> [a]n examination of the disclosures made by Star ... reveals not one piece of information related to any effort by Star to at any time *independently investigate* [the O'Connors'] claim. Star's only response to the allegation of bad faith and failure to *independently investigate* is to state that Star tendered the defense to its principal, and later commenced the interpleader suit.

(Emphasis added.)

The O'Connors' supplemental appellate arguments regarding the duties Star owed as licensing bond surety generally track the reasoning of the superior court. The O'Connors discuss the similarities between an insurer's duties to its insured and a surety's duty to its obligee; they rely heavily on our holding in *Loyal Order of Moose*. They argue that Star, as surety, owed them a duty of good faith and fair dealing, and that Star's breach of this duty gives rise to a tort action for bad faith. We held in *Loyal Order of Moose* that a "failure by a surety minimally to investigate its principal's alleged default may constitute bad faith if that investigation would confirm the obligee's allegations in

**6.** *Loyal Order of Moose v. Int'l Fid. Ins. Co.,* 797 P.2d 622 (Alaska 1990).

**7.** The superior court cited *Alaska Pacific Assurance Co. v. Collins,* 794 P.2d 936, 947 (Alaska 1990). We there held that "[a] covenant of good faith and fair dealing is an implied component of all contracts as a matter of law."

**8.** *Loyal Order of Moose,* 797 P.2d at 626 (noting that breach of duty of good faith and fair dealing in insurance context sounds in tort); *see also State Farm Fire & Cas. Co. v. Nicholson,* 777 P.2d 1152, 1154–56 (Alaska 1989).

**9.** *Loyal Order of Moose,* 797 P.2d at 626.

**10.** *Id.* at 628 (footnote omitted).

material part." [11] Relying on this holding, the O'Connors assert that we "must find that Star is directly bound to *independently* investigate claims submitted by the O'Connors, and others affected as well, and to be directly responsible for losses incurred due to Homestead Builders's negligent or improper work." (Emphasis in original.)

Our holding in *Loyal Order of Moose* addressed payment and performance bonds for construction contracts. We held that sureties on those bonds owe their obligees a duty of good faith and fair dealing, and that breach of that duty gives rise to an action for bad faith.[12] We reasoned that the surety owed its obligee a duty of good faith and fair dealing because the surety relationship involved there was like insurance, and insurers are subject to bad faith tort liability.[13]

The O'Connors' reliance on *Loyal Order of Moose* is misplaced because payment and performance bonds differ from licensing bonds of the sort Star issued here. We noted in *Loyal Order of Moose* that "[p]ursuant to the parties' contract, for included additional consideration, Darling [the contractor and principal] obtained performance and payment bonds from IFI [the surety] naming Moose Lodge as 'obligee.' "[14] The purpose of the performance bond was to ensure that the work was completed, and the purpose of the payment bond was to ensure that the subcontractors were paid for materials and labor.[15]

In comparison, licensing bonds are statutorily mandated, and their value is determined by statute, rather than by the value of any given project or the number of the contractor's projects.[16] And unlike a project owner who requires the contractor to obtain specific payment or performance bonds covering the project, an owner like the O'Connors does not pay additional consideration for licensing bonds because, at least in theory, only a licensed contractor may perform construction work.[17] Consequently, a person hiring a construction contractor, at least in theory, cannot hire an unlicensed contractor.[18] There is no incremental additional licensing bond cost attributable to a particular project.

Similarly, the licensing bond suretyship arrangement is not structured to guarantee the performance of, or payment for, a particular construction contract. Rather, as we held in *Jones v. Short*, the purpose of the bonding requirement in AS 08.18 is to "provid[e] a fund against which claims may be made."[19] Moreover, because AS 08.18.071 permits contractors to file a cash deposit or a licensing bond to become registered, not all contractors necessarily obtain licensing bonds.[20]

The analogy between insurance contracts and suretyships discussed in *Loyal Order of Moose* therefore does not apply in the licensing bond context.[21] Nor do we find in *Loyal*

---

11. *Id.*

12. *Id.* at 627–28.

13. *Id.* In *Loyal Order of Moose* we compared *State Farm Fire & Casualty Co. v. Nicholson*, 777 P.2d 1152, 1157 (Alaska 1989) (holding "an insurer's bad faith failure to settle a first-party claim is a tort") with *O.K. Lumber Co. v. Providence Washington Insurance Co.*, 759 P.2d 523, 525–26 (Alaska 1988) (holding that liability insurer did not owe duty of good faith and fair dealing to injured third-party claimant), and concluded: "In our view the relationship of a surety to its obligee—an intended creditor third-party beneficiary—is more analogous to that of an insurer to its insured than to the relationship between an insurer and an incidental third-party beneficiary." *Loyal Order of Moose*, 797 P.2d at 628.

14. *Loyal Order of Moose*, 797 P.2d at 623.

15. *Id.* at 623–24.

16. AS 08.18.011 (registration required); AS 08.18.071 (bond or deposit required for registration).

17. AS 08.18.011; AS 08.18.071.

18. Unlicensed contractors are also disfavored under Alaska law. AS 08.18.151 prohibits unregistered contractors from bringing actions in state courts for breach of contract or to collect compensation for work for which registration is required without proving that the contractor was a registered contractor at the time of contracting for the performance of the work. *See Gross v. Bayshore Land Co.*, 710 P.2d 1007, 1013 (Alaska 1985).

19. *Jones v. Short*, 696 P.2d 665, 668 (Alaska 1985).

20. AS 08.18.071.

21. *See Loyal Order of Moose v. Int'l Fid. Ins. Co.*, 797 P.2d 622, 627–28 (Alaska 1990).

**6**

*Order of Moose* any basis for placing a duty on licensing bond sureties to independently investigate third-party claims against bonded contractors. By "third-party claims" we mean claims made by individuals, like the O'Connors, who are neither the principal (contractor) nor the surety (insurer) in a licensing bond suretyship arrangement of the sort contemplated in AS 08.18.071.

Likewise, we find in AS 08.18.071 no basis for imposing on licensing bond sureties a duty to independently investigate third-party claims against bonded contractors. Per AS 08.18.071(a)(3), a contractor's licensing bond must be conditioned on a promise to pay all "amounts that may be adjudged against the [contractor] by reason of negligent or improper work or breach of contract in the conduct of the contracting business." The statute nowhere states or implies that licensing bond sureties have a duty to independently investigate claims made against bonded contractors. The statutory language only requires that licensing bonds be conditioned on a promise to pay amounts adjudged against the contractor.

Furthermore, as we noted above, AS 08.18.071(b) gives contractors the option of filing a cash deposit with the Commissioner of the Department of Community and Economic Development "[i]n lieu of the surety bond." If the contractor places a cash deposit, the commissioner will not pay claimants from a contractor's cash deposit until a final judgment is entered.[22] The O'Connors acknowledged below that the commissioner does not owe third-party claimants a duty to investigate claims against contractors who file cash deposits. Given that AS 08.18.071 permits contractors to choose between filing a cash deposit or a surety bond, it would be incongruous to impose on licensing bond sureties a duty to independently investigate third-party claims even though the commis-

sioner owes no equivalent duty when contractors file cash deposits.

We therefore discern nothing in AS 08.18 that can be read to impose on licensing bond sureties a duty to independently investigate third-party claims against bonded contractors.

Because the O'Connors have not established that Star owed them an actionable duty to independently investigate the O'Connors' claim against the bonded contractor, and because we see no basis in precedent or in statute for imposing such a duty, we decline to hold that Star by virtue of issuing the licensing bond owed the O'Connors an actionable duty to independently investigate the O'Connors' claim against Homestead Builders.

Because we hold that Star owed the O'Connors no actionable tort duty to independently investigate their claims against Homestead Builders, it is unnecessary for us to consider Star's contention that licensing bond sureties should not be subject to tort damages for breaches of the covenant of good faith and fair dealing generally. Star's reliance on *Cates Construction, Inc. v. Talbot Partners*, in which the California Supreme Court held that obligees of construction performance bonds may not recover in tort for a surety's bad faith, implies that Star is asking us to overrule *Loyal Order of Moose*.[23] Nothing in our decision today should be viewed as inconsistent with our holding in *Loyal Order of Moose*.

## IV. CONCLUSION

For the reasons discussed above, we AFFIRM the grants of summary judgment on the O'Connors' bad faith claims against Star.

<hr>

**22.** AS 08.18.081(b) states: "If a judgment is entered against the cash deposit, the commissioner, upon receipt of a certified copy of a final judgment, shall pay the judgment from the amount of the deposit, in accordance with the priorities set out in (a) of this section." 12 Alaska Administrative Code (AAC) 21.140(a) (2000) states: "A claimant who obtains final judgment against a contractor may tender to the commissioner a certified copy of the final judgment with the

request that payment be made upon the judgment from the proceeds of the cash deposit."

**23.** *Compare Cates Constr., Inc. v. Talbot Partners*, 21 Cal.4th 28, 86 Cal.Rptr.2d 855, 980 P.2d 407, 410 (1999) (holding tort recovery inappropriate for breach of implied covenant of good faith and fair dealing in context of construction performance bond) *with Loyal Order of Moose*, 797 P.2d at 627–28 (reaching opposite conclusion).