Ronald D. ROCKSTAD, Appellant,

v.

Gerald ERIKSON, Appellee.

No. S–10464.

Supreme Court of Alaska.

June 10, 2005.

Rehearing Denied July 7, 2005.

1216

Richard D. Wright, Fairbanks, for Appellant.

Richard L. Crabtree, Routh Crabtree, APC, Anchorage, for Appellee.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

*OPINION*

CARPENETI, Justice.

## I. INTRODUCTION

A jury found Ronald Rockstad liable for failing to repay a loan from Gerald Erikson that was secured by a note and deed of trust on Rockstad's home. The superior court awarded Erikson the unpaid sum, including the substantial interest that had accumulated on it, as well as costs and fees. Rockstad claims that the trial court erroneously granted summary judgment to Erikson on Rockstad's statute of limitations defense. Because Rockstad's trial admissions render any error associated with the grant of summary judgment harmless, we do not reach his claim of error. Rockstad also argues that the trial court erroneously granted summary judgment to Erikson on Rockstad's usury defense. Because we hold that as a matter of law the parties' transaction was not usurious, we affirm. Rockstad next claims that the note and deed of trust were void, and thus that the judgment and subsequent judicial foreclosure were inappropriate. We affirm the trial court's application of quasi-estoppel to enforce the parties' agreement. Finally, we affirm the superior court's award of costs and attorney's fees to Erikson, with

the exception of the costs and fees that accrued during litigation of Rockstad's bankruptcy proceeding.

## II. FACTS AND PROCEEDINGS

### A. Facts

Rockstad and his wife were the equal co-owners of "Rockstad & Co., Realtors, Inc." In August 1990 Erikson loaned Rockstad $26,000 to consummate a real estate purchase. Erikson claims that there was a single loan for $26,000, while Rockstad asserts there were actually two separate loans, of $12,200 and $13,800. Erikson claims that Rockstad failed to make payments since July 1997, while Rockstad responds that he paid the loan(s) back in full "no later than the end of 1993."

Rockstad signed a Deed of Trust Note (the Note) and a deed of trust at the time the loan was made. The Note states that Rockstad promises to pay Erikson the sum of $26,000, "together with interest thereon at the rate of an amount equal to the interest rates tabulated on the credit cards providing the source for this loan." Erikson called as an expert witness an accountant who estimated that this interest rate averaged 17.99% per month during the term of the loan. The deed of trust is on Rockstad's home,[1] to secure repayment of the $26,000. The Note states that "[if] any suit or action is instituted to collect this note, or any part thereof, the undersigned promise(s) and agree(s) to pay ... a reasonable sum as attorneys fees in such action." The deed of trust states that Rockstad agrees "to pay all costs and expenses, including ... attorney's fees in a reasonable sum, in any ... action or proceeding ... brought by [Erikson] to foreclose this Deed."

Rockstad claimed that "[t]he agreement between the parties was that these documents would not be recorded," and that "various critical terms were left blank on the deed of trust such that they were not recordable." Rockstad also asserted that he was to be charged no interest on the loan, because he "was to provide 'interest' via assisting Erikson in various real estate ventures." Rockstad thus alleged that Erikson altered the Note and deed of trust subsequent to signing, and added the interest and repayment provisions.

At some point in late 1997, Rockstad signed a "Statement of Commission and Agreement to Offset" (the Offset). It stated that "Rockstad Realty earned a commission of $5,700.00 at the closing of the sale by Gerald Erikson" of a certain piece of property on July 11, 1997, that "Rockstad Realty shall retain the $100.00 of earnest money previously deposited" by the buyer, and that "[t]he balance of $5,600.00 is credited to the outstanding indebtedness of Rockstad Realty to Gerald Erikson." Rockstad asserts that he was rushing to clear snow from his driveway in order to travel to the airport when Erikson approached him and requested that he sign the Offset. Rockstad claims that "Erikson misrepresented the document he presented to Rockstad as a document necessary for his taxes," and that because he was in a rush, "Rockstad signed the document without reviewing it." Rockstad further claims that "there was no written commission agreement between Rockstad & Co. and Erikson," and that "there was no commission due and thus no commission to assign."

### B. Proceedings

Erikson filed suit against Rockstad in February 2000, demanding damages equivalent to the original loan principal of $26,000, plus interest, late charges, and costs and fees, minus payments made by Rockstad.[2] Erikson asked that the deed of trust be foreclosed, Rockstad's home sold, and the proceeds of the sale be applied toward payment of the judgment. Rockstad answered that the note and deed of trust had been paid in full and

---

1. At the time the agreement was made, Rockstad was married. Rockstad and his wife owned the home as tenants by the entirety, and their names both appear on the title of the home. The Rockstads subsequently dissolved their marriage, and Rockstad's wife now resides in California. All indications are that the house is still owned by both Rockstads, as tenants in common. The significance of these facts will be discussed in Part IV.C, *infra*.

2. Erikson estimated the total amount Rockstad repaid, including the Offset, at $16,755.76.

that the deed of trust had been modified from the original. Rockstad's answer also pleaded seven affirmative defenses: accord and satisfaction, payment in full, fraud, laches, statute of limitations, failure to account, and usury. In a pretrial order, the superior court ordered Rockstad to file for summary judgment on, or withdraw, his affirmative defenses of accord and satisfaction, payment in full, statute of limitations, and usury. After Rockstad moved for summary judgment, the superior court denied Rockstad's motions for summary judgment, allowed both parties to submit additional briefing on the statute of limitations issue, and granted partial summary judgment to Erikson denying Rockstad's usury and statute of limitations defenses.

The case was tried before a jury in November 2001. The jury found that (1) Rockstad breached his agreement with Erikson by failing to fully repay the amount he borrowed and the interest on it; and (2) Rockstad owed Erikson a total of $121,310.00. The superior court entered judgment against Rockstad for this sum, plus prejudgment interest, and fixed the post-judgment interest rate at 17.99%. The court later awarded Erikson a total of $11,082.12 in costs and $34,522.75 in attorney's fees. The court also denied Rockstad's post-trial "Motion to Dismiss Judicial Foreclosure," and ordered the foreclosure of the deed of trust and the sale of Rockstad's share of his home in satisfaction of the judgment. In July 2002 the court amended its final judgment to include all costs, attorney's fees, and accrued interest, and concluded that Rockstad owed Erikson a total of $182,071.96.

Rockstad appeals.[3]

## III. STANDARD OF REVIEW

■■■ We review a trial court's rulings on questions of fact for clear error.[4] We review a trial court's rulings on questions of law, and the application of law to fact, *de novo* and adopt the rule of law that is most persuasive in light of precedent, reason, and policy.[5] Although the interpretation of contractual language is a question of law and reviewed *de novo*, "[t]he intent of the parties when entering a contract is a question of fact and is thus reviewed under the clearly erroneous standard."[6]

■■■ We review grants of summary judgment *de novo*, drawing all factual inferences in favor of, and viewing the facts in the light most favorable to the non-prevailing party (generally the non-movant).[7] We affirm grants of summary judgment when there are no genuine issues of material fact, and the prevailing party (generally the movant) was entitled to judgment as a matter of law.[8] Summary judgment is therefore improper in contractual disputes "when the evidence before the superior court establishes a factual dispute as to the intent of the contracting parties."[9]

■■■ We exercise our independent judgment when interpreting Alaska's civil rules,[10]

---

3. Rockstad filed for bankruptcy under Chapter 13 in September 2002, but moved for and was granted an order dismissing his bankruptcy petition in December of that same year. In March 2003 the superior court stayed execution of its judgment pending Rockstad's appeal to this court. The superior court provided that if the judgment or any part of it was affirmed, or the appeal dismissed, Rockstad would be liable for the portion of the judgment affirmed, "plus interest, costs, and fees." The superior court included Erikson's post-judgment costs and attorney's fees, including those associated with the bankruptcy proceedings, in the total judgment. Erikson calculated his post-trial costs and fees at $5,078.29, an amount that included costs and fees associated with the bankruptcy proceeding. Erikson successfully moved to have $5,078.29 in funds held in the court's registry released to him.

4. *O'Connor v. Star Ins. Co.,* 83 P.3d 1, 3 (Alaska 2003).

5. *Rausch v. Devine,* 80 P.3d 733, 737 (Alaska 2003).

6. *K & K Recycling, Inc. v. Alaska Gold Co.,* 80 P.3d 702, 712 (Alaska 2003).

7. *Ellis v. City of Valdez,* 686 P.2d 700, 702 (Alaska 1984).

8. *Witt v. State, Dep't of Corrections,* 75 P.3d 1030, 1033 (Alaska 2003) (internal citations omitted).

9. *K & K Recycling,* 80 P.3d at 712.

10. *Bustamante v. Alaska Workers' Compensation Bd.,* 59 P.3d 270, 272 (Alaska 2002).

but review a superior court's procedural decisions for abuse of discretion.[11] We will treat a superior court's decision to apply a novel procedural rule as a decision of law, and review it *de novo*.[12]

▮ We overturn an award of attorney's fees only where we find an abuse of discretion,[13] or reverse a trial decision favoring the prevailing party.[14] We reverse a ruling for abuse of discretion only when left with a definite and firm conviction, after reviewing the entire record, that the trial court erred.[15]

## IV. DISCUSSION

### A. The Superior Court's Grant of Summary Judgment in Erikson's Favor on the Statute of Limitations Issue, if Error, Was Harmless.

#### 1. The superior court is not required to grant summary judgment merely because the motion for summary judgment is unopposed.

Rockstad argues that the superior court erred in denying his unopposed motion for summary judgment on the statute of limitations issue. Rockstad moved for summary judgment on several grounds, including the statute of limitations, but Erikson's opposition did not address the statute of limitations issue. The superior court's order appeared to grant the motion in favor of Erikson, noting that "Rockstad's acknowledgment of debt revived/extended the limitations period." Rockstad moved for reconsideration, and the superior court clarified the effect of the order, stating that the "undisputed facts may support a finding that the statute of limitations defense is inapplicable as a matter of law." The court then allowed Rockstad and Erikson to submit further briefing on the matter, and ultimately granted partial summary judgment on this issue to Erikson.

▮ Even though Rockstad's motion for summary judgment was initially unopposed, the superior court was not required to grant it. We have stated that a movant does not have a right to summary judgment merely because the non-moving party fails to respond.[16] Civil Rule 56(e) provides that where the non-moving party fails to offer an affidavit setting forth specific facts showing that there is a genuine issue for trial, a court shall enter summary judgment against that party "if appropriate." We have noted that "[t]his language indicates that the superior court retains some degree of discretion in deciding whether to grant summary judgment in cases where there is no response to the filing of the summary judgment motion."[17] In sum, the superior court is not required to grant summary judgment even where the motion is unopposed. Where, as here, the record appeared to show that summary judgment for the moving party was not appropriate, the superior court properly declined to grant summary judgment to that party. We cannot agree with Rockstad's

**11.** *Willoya v. State, Dep't of Corrections,* 53 P.3d 1115, 1119 (Alaska 2002).

**12.** Our cases reviewing trial court procedural decisions for abuse of discretion generally involve the application of *existing* procedural rules that are intended to provide a trial court with leeway. *See, e.g., Edelman v. Edelman,* 61 P.3d 1, 4–5 (Alaska 2002) (reviewing decision to retain jurisdiction over certain claims and to award attorney's fees); *Bustamante,* 59 P.3d at 272 (reviewing decision to appoint counsel for civil litigant); *Willoya,* 53 P.3d at 1119–21 (reviewing decisions to allow attorney to withdraw, to refuse to sanction attorney, to refuse to order withdrawing attorney to send litigant all litigation materials within thirty days, and to refuse to appoint discovery master). The present case, however, involves the decision by a trial court to create an entirely *new* procedural rule. In *Stalnaker v.*

*Williams,* 960 P.2d 590 (Alaska 1998), we were required to determine the proper standard of review applicable to an agency's choice of procedure in the absence of any instructive agency provision. We treated such an agency decision as an issue of law. *Id.* at 595.

**13.** *Laverty v. Alaska R.R. Corp.,* 13 P.3d 725, 738 (Alaska 2000).

**14.** *See, e.g., Bauman v. Day,* 892 P.2d 817, 829 (Alaska 1995).

**15.** *Willoya,* 53 P.3d at 1119.

**16.** *Hinsberger v. State,* 53 P.3d 568, 572 (Alaska 2002).

**17.** *Dome Labs. v. Farrell,* 599 P.2d 152, 159 n. 24 (Alaska 1979).

claim that the court was required to grant the motion in his favor.

## 2. Any error in the court's grant of summary judgment in Erikson's favor was harmless.

■ Rockstad renews several arguments he made to the superior court as to why summary judgment was improperly granted in favor of Erikson. First, he argues that Alaska's six-year time limit for bringing actions on contractual obligations runs from the date of the last payment toward the obligation, and had lapsed between Rockstad's last payment to Erikson, which he states was "no later than the end of 1993," and the date Erikson filed his lawsuit, February 28, 2000. Second, he argues that the offset was invalid because (1) he was "duped" into signing the offset by Erikson's fraudulent behavior; (2) he had no authority to forgive a debt owed only to Rockstad Realty Co., which is a separate entity; and (3) neither he nor Rockstad Realty Co. was entitled to any commission from Erikson in the first place. Therefore, according to Rockstad, the offset should not count as a payment to Erikson that renewed the statutory time limit for bringing suit. Rockstad argues that by swearing to these three points in an affidavit, he raised a genuine issue of material fact that precluded summary judgment in Erikson's favor.

However, we need not reach any of these arguments because Rockstad introduced evidence at trial showing that he had made a payment to Erikson in 1994, thereby reviving the debt for statute of limitations purposes. Rockstad's trial exhibits L and L–1 consisted of pages from his dayplanner listing payments to Erikson and a summary of these payments, and Rockstad offered the exhibits as proof that he made a March 31, 1994 payment to Erikson as part of his obligation on the Note. This payment moots Rockstad's statute of limitations argument because even assuming that the six-year statute of limitations applies, Erikson filed suit before the limitations period ran out. As Rockstad's own evidence shows that Erikson's action was timely filed, we hold that even if Rockstad raised a triable fact issue as to the offset, any error in granting summary judgment on that issue was harmless.[18] Accordingly, the judgment and accompanying jury verdict in Erikson's favor must stand.

## B. The Superior Court Properly Granted Erikson Summary Judgment on Rockstad's Usury Defense.

■ Rockstad also moved for summary judgment on his affirmative defense that Erikson's loan arrangement was usurious according to AS 45.45.010(b). That statute provides:

> Interest may not be charged by express agreement of the parties in a contract or loan commitment that is more than five percentage points above the annual rate charged member banks for advances by the 12th Federal Reserve District on the day on which the contract or loan commitment is made. A contract or loan commitment in which the principal amount exceeds $25,000 is exempt from the limitation of this subsection.

The interest rate charged by the Twelfth Federal Reserve District on the date Rockstad and Erikson made their arrangement was seven percent. Erikson claimed that the parties agreed to a credit-card-based interest rate of twenty percent, clearly more than five percentage points above the federal rate. As mentioned, Erikson claimed he had loaned $26,000 to Rockstad, thus putting the loan outside the reach of AS 45.45.010. Rockstad argued at summary judgment, however, that his transaction with Erikson involved two separate loans, each loan below the statute's $25,000 limit. Thus, Rockstad claims, the transaction should be void as unlawful.

Rockstad supported his motion with an affidavit explaining that there had been two separate loans, and a copy of the two checks from Erikson that Rockstad claimed represented separate loans. Erikson admitted that he did in fact write two separate checks

---

**18.** *Cf. Municipality of Anchorage v. Higgins,* 754 P.2d 745, 748 (Alaska 1988) ("[W]e may uphold the lower court's ruling if there is any other ground apparent, from the record, which, as a matter of law, would support the result reached by the trial court.") (citing *Carlson v. State,* 598 P.2d 969, 973 (Alaska 1979)).

to Rockstad, but pointed out that the checks are both dated August 30, 1990 and insisted that they pertain to a single loan. On appeal, Erikson notes that the only evidence Rockstad offered to support his motion (besides the checks themselves) was his affidavit. Rockstad argues that this affidavit was sufficient to establish a genuine issue of material fact, and the superior court's grant of summary judgment to Erikson on the usury issue was thus inappropriate.

 A single affidavit may suffice to create a genuine issue of material fact precluding summary judgment, as Rockstad notes.[19] However, Rockstad's affidavit on this issue is largely irrelevant, because the facts that are not in dispute are sufficient to support summary judgment as a matter of law. As Rockstad himself admits, it is undisputed that there was only one promissory note between the parties, for the sum of $26,000. Since the Note constituted a contract between the parties, its proper meaning is a legal question.

In interpreting a contract, we depart from its plain language only where the contract's language is ambiguous.[20] A court may find ambiguity in a contractual provision only where "the contract as a whole and all extrinsic evidence support two different interpretations, both of which are reasonable."[21] There is no such ambiguity in the Note. The Note speaks in the singular only, of "the sum of Twenty Six Thousand Dollars," and "this

loan," "this debt," and "this note." Nowhere does it even suggest that there were multiple loans involved.

 There is also, as Erikson suggests, a general presumption in American law that transactions are lawful and non-usurious.[22] And we are mindful of the venerable rule that "where a contract is fairly open to two constructions, by one of which it would be lawful and the other unlawful, the former must be adopted."[23] Even assuming that the Note could possibly be read as providing for two separate loans, such a reading would necessarily imply that the Note constitutes an unlawfully usurious contract.

Because the plain language of the Note shows that there was only one loan, for $26,000, and because even if the Note were ambiguous we would construe it to favor its legality, we decline to adopt Rockstad's interpretation of the Note, and affirm the grant of summary judgment to Erikson on this issue.[24]

### C. The Deed of Trust Is Enforceable Under the Doctrine of Quasi–Estoppel.

 Following trial, the superior court considered Rockstad's "Motion to Dismiss Judicial Foreclosure." According to the motion, (1) Rockstad's family residence was the property named in the deed of trust to secure Erikson's loan; (2) this family residence was held by Rockstad and his wife Lauren

19. Erikson asserts that "the usury claim was properly stricken by the trial court," given the paucity of evidence in support of Rockstad's motion, and the rule requiring the court to "view all facts in the light most favorable to the non-moving party." This slightly misstates the relevant law. Reviewing a grant of summary judgment, this court views all facts in the light most favorable to the *non-prevailing party*, not the non-moving party. *Ellis v. City of Valdez*, 686 P.2d 700, 702 (Alaska 1984). This standard is commonly phrased in terms of the non-moving party because it is the non-movant at whose expense summary judgment is usually granted. This case is unusual, however, because summary judgment was granted to Erikson, the non-movant. Rockstad, the non-prevailing party, was entitled to have all factual inference resolved in his favor.

20. *Williams v. Crawford*, 982 P.2d 250, 253 (Alaska 1999).

21. *McMillan v. Anchorage Cmty. Hosp.*, 646 P.2d 857, 863 (Alaska 1982).

22. 45 Am.Jur.2d *Interest and Usury* § 352 (2003).

23. *Hobbs v. McLean*, 117 U.S. 567, 576, 6 S.Ct. 870, 29 L.Ed. 940 (1886).

24. Erikson argues additionally that "Rockstad knew that Erikson was borrowing the money to lend to Rockstad on Erikson's credit cards," and that "[t]he Note provides, in essence, that Rockstad was to indemnify Erikson for the sums he had to pay on his credit cards as a result of his borrowing the funds to lend to Rockstad." Therefore, Erikson asserts, "the 'interest' referred to in the Note is actually just Erikson's loan expenses, which, as such, are not subject to the usury law." We need not reach this argument, because we affirm the superior court on the grounds above.

Rockstad as tenants by the entirety, and Lauren Rockstad's name appears on the title to that property; (3) "where husband and wife both appear on the deed both must sign in order for a conveyance to be valid" under AS 34.15.010(b) and (d); (4) the deed of trust was signed only by Rockstad himself; and (5) therefore the deed of trust is void.[25] The superior court denied Rockstad's motion, and Rockstad appeals.

■■■ The superior court based its decision to allow foreclosure in part on the equitable doctrine of quasi-estoppel. Quasi-estoppel "appeals to the conscience of the court to prevent injustice" by precluding a party from taking a position so inconsistent with one he has previously taken that circumstances render assertion of the second position unconscionable.[26] Unlike other forms of estoppel, quasi-estoppel "does not require ignorance or reliance as essential elements," but "any representation made to the party claiming quasi-estoppel must have been based [on] full knowledge of the facts."[27] Since a finding of quasi-estoppel is closely tied to the particular facts and circumstances of the individual case, the "determination is essentially a factual one and, as such, is one which will not be disturbed on appeal unless the findings on which it is based are clearly erroneous."[28]

■■■ Among the many factors we consider in applying quasi-estoppel are: (1) "whether the party asserting the inconsistent position has gained an advantage or produced some disadvantage through the first position"; (2) "the magnitude of the inconsistency"; (3) "whether changed circumstances tend to justify the inconsistency"; (4) whether the party claiming estoppel relied on the inconsistency to his detriment; and (5) "whether the first assertion was made with full knowledge of the facts."[29]

Most of the elements of quasi-estoppel are self-evident in this case. Since Rockstad himself signed the deed of trust in order to secure his loan from Erikson, he obviously changed his position by later asserting that the document was invalid. The gain to Rockstad and detriment to Erikson that resulted from the change in position, and from Erikson's reliance on Rockstad's original position, were clearly significant. Rockstad must have known that his wife was listed on the title to their home. And Rockstad has offered nothing that could justify his inconsistent positions. In sum, the court was justified in applying quasi-estoppel to validate the deed of trust and enforce Erikson's foreclosure on Rockstad's half-interest in the property.[30]

**D. The Superior Court Properly Awarded Full Reasonable Attorney's Fees to Erikson Covering the Trial and Post–Trial Periods, But Erred in Awarding Attorney's Fees Incurred in Litigating Rockstad's Bankruptcy Petition.**

**1. Erikson is entitled to an award of full reasonable attorney's fees, including fees incurred on appeal.**

■■■ Rockstad argues that various aspects of the superior court's fee award to Erikson were legally erroneous, and should be reversed even if we uphold all other aspects of the court's rulings and the jury's verdict. Rockstad claims that "it has long

---

**25.** AS 34.15.010 states in relevant part:
 (b) In a deed or conveyance of the family home or homestead by a married man or a married woman, the husband and wife shall join in the deed or conveyance.
 . . . .
 (d) Failure of the spouse to join in the deed or conveyance does not affect the validity of the deed or conveyance, unless the spouse appears on the title.

**26.** *Jamison v. Consol. Utils., Inc.*, 576 P.2d 97, 102 (Alaska 1978) (quoting *Donaldson v. Le Nore*, 112 Ariz. 199, 540 P.2d 671 (1975)).

**27.** *Id.*

**28.** *Id.* at 102.

**29.** *Id.* at 102–03.

**30.** Rockstad also appeals the superior court's alternative ground for allowing the foreclosure, which was that the deed was proper under the doctrine of estoppel by deed. However, because we hold that the superior court properly granted foreclosure based on quasi-estoppel, we need not consider the propriety of the other grounds for its decision.

been the Alaska practice to allow the prevailing party to recover *partial fees*," but the court's award of "total fees" rather than partial fees is "manifestly unreasonable." (Emphasis in original.) Generally speaking, Rockstad is correct. We have stated that "Civil Rule 82 embodies a policy that the prevailing party is only entitled to recover partial attorney's fees,"[31] and have held that full fee awards are manifestly unreasonable unless the prevailing party has shown "bad faith or vexatious conduct by the losing party."[32] However, as Rockstad admits, where a contract between the parties allows for one party to recover attorney's fees in the event of litigation, "the contract provision must prevail over any limitations otherwise imposed by Rule 82."[33] Such a contract provision was in fact the basis for Erikson's motion for costs and fees, and the superior court's subsequent award. Rockstad does not appear to dispute that both the Note and the deed of trust contain valid clauses requiring him to pay Erikson's reasonable attorney's fees in the event of default. Since the jury determined that Rockstad did in fact default, it was permissible for the superior court to award Erikson full fees, pursuant to the parties' contract.

 The parties also dispute the propriety of the superior court's order that Rockstad pay Erikson attorney's fees for all post-judgment appellate proceedings, insofar as the judgment is upheld or the appeal dismissed by this court. Rockstad argues that Rule 82 does not cover post-judgment fees and costs.[34] As discussed above, the fees in this case were awarded pursuant to the terms of the parties' agreement, and not pursuant to Rule 82. We have previously held that where a contract provision "has the evident purpose of shifting reasonable fees to the winner in litigation concerning the contract," that contract requires fee shifting "at all court levels," and not just in proceedings before the trial court.[35] The superior court thus properly construed the terms of the Note and the deed of trust to cover fees incurred in post-judgment appellate proceedings.

## 2. Erikson is not entitled to any fees incurred in litigating Rockstad's bankruptcy petition.

 As a final matter, Rockstad argues that attorney's fees and costs for bankruptcy actions can only be awarded by a federal bankruptcy court, and that the superior court erroneously "awarded fees in an action other than the one before it, i.e., the bankruptcy case."[36] Erikson's rebuttal is that filing and dismissing a bankruptcy petition, along with other post-judgment conduct by Rockstad, amounted to "maneuvers" and "vexatious conduct," for which attorney's fees were properly awarded. Erikson also argues that the fee-shifting language in the Note and deed of trust entitle him to all "actual attorney's fees, including fees incurred while the debtor was in bankruptcy proceedings." We agree with Rockstad on this issue.

 We have indicated that trial courts may have authority to award attorney's fees incurred by a litigant responding to an opponent's frivolous or vexatious post-judgment conduct.[37] But we have never specifically applied this rule to bankruptcy proceedings. When attorney's fees are awarded based upon misconduct by an attorney or party, and not the outcome of the litigation, the

**31.** *Dansereau v. Ulmer*, 955 P.2d 916, 919 (Alaska 1998).

**32.** *Demoski v. New*, 737 P.2d 780, 788 (Alaska 1987).

**33.** *Ursin Seafoods, Inc. v. Keener Packing Co.*, 741 P.2d 1175, 1181 (Alaska 1987).

**34.** Rockstad does concede that his post-trial "untimeliness ... may have caused Mr. Erikson extra expenses," and accordingly has offered to pay $799 of Erikson's post-trial fees.

**35.** *Gamble v. Northstore P'ship*, 28 P.3d 286, 290 (Alaska 2001).

**36.** Although the superior court did not actually award any fees incurred in the bankruptcy case, its "Order Granting Stay of Execution Pending Appeal" suggests that such fees will apply following this appeal. We therefore reach this issue.

**37.** *Torrey v. Hamilton*, 872 P.2d 186, 188 n. 3 (Alaska 1994).

matter is procedural.[38] Federal courts have "original and exclusive" jurisdiction over all bankruptcy proceedings.[39] Federal and state courts addressing the issue[40] have followed the Ninth Circuit's conclusion that "it is for Congress and the federal courts, not the state courts, to decide what incentives and penalties are appropriate for use in connection with the bankruptcy process and when those incentives or penalties shall be utilized."[41] The Ninth Circuit has explained that "the need for uniform and expeditious handling of bankruptcy cases" compels the application of federal sanctions by federal courts as to procedural abuses in those cases.[42]

■ We have also never explicitly addressed the issue of whether contractual fee-shifting provisions can cover post-judgment bankruptcy proceedings.[43] The interpretation and application of contracts is a question of Alaska state law. Where the substantive issues raised in a bankruptcy proceeding include issues of state law, federal courts have held that attorney's fees may be awarded where permitted or provided under the relevant state law.[44] However, awarding fees is still part of the bankruptcy procedure, and as

such it is a decision for the bankruptcy court to make.[45]

In sum, it was the sole province of the bankruptcy court, and not the superior court or this court, to award attorney's fees to Erikson for his efforts in responding to Rockstad's bankruptcy petition.[46] Thus we reverse and vacate the portion of the trial court's attorney's fees award that included fees incurred by Erikson in connection with the bankruptcy petition.

## V. CONCLUSION

Because any error regarding Rockstad's statute of limitations defense was rendered harmless by his trial admissions, we AFFIRM the trial court's grant of summary judgment to Erikson on Rockstad's statute of limitations defense. We AFFIRM summary judgment to Erikson on Rockstad's usury defense. We AFFIRM the trial court's application of quasi-estoppel to enforce the parties' agreement and foreclose on Rockstad's interest in his home. We also AFFIRM the superior court's award of costs and attorney's fees to Erikson, except its award of the costs and attorney's fees incurred in litigating

---

**38.** *In re Larry's Apartment, L.L.C.*, 249 F.3d 832, 838 (9th Cir.2001).

**39.** *Wagner v. Key Bank of Alaska*, 846 P.2d 112, 116 (Alaska 1993) (citing 28 U.S.C. § 1334(a) (1988)); *see also* U.S. Const., art. I, § 8, cl. 4 ("[The Congress shall have the power] To establish .. uniform Laws on the subject of Bankruptcies throughout the United States.").

**40.** *See, e.g., Choy v. Redland Ins. Co.*, 103 Cal. App.4th 789, 127 Cal.Rptr.2d 94, 101–104 (2002); *Mason v. Smith*, 140 N.H. 696, 672 A.2d 705, 707–08 (1996); *Shiner v. Moriarty*, 706 A.2d 1228, 1238 (Pa.Super.1998).

**41.** *Gonzales v. Parks*, 830 F.2d 1033, 1036 (9th Cir.1987).

**42.** *In re Larry's Apartment*, 249 F.3d at 838.

**43.** In *Torrey* we held that "the attorney's fees incurred in the adversary proceeding in bankruptcy" are not "recoverable as 'costs of collection' for the original state court judgment," but this holding was based on our interpretation of Rule 82, not a contractual fee-shifting provision. 872 P.2d at 187–88.

**44.** *See, e.g., In re Baroff*, 105 F.3d 439, 441 (9th Cir.1997).

**45.** *See, e.g., In re Hassen Imps. P'ship*, 256 B.R. 916, 920–21 (B.A.P. 9th Cir.2000).

**46.** Erikson's other arguments on this point are meritless. Erikson asserts that "[g]iven the fact of the supersedeas bond, the substantial equity in Rockstad's residence and in other assets, ... the judgment, having been recorded, is now 'oversecured.'" Erikson argues that Am.Jur 2d *Bankruptcy* § 2302 (2003) supports the proposition that "[t]he holder of an oversecured claim can recover ... any reasonable fees." This authority, however, is clearly referring to recovery *in the federal court* where bankruptcy proceedings occurred. Erikson also argues he should be able to "bring supplemental proceedings" under Civil Rule 15(d), for his "expenses incurred in collection efforts." Rule 15(d) authorizes supplemental *pleadings*, not "supplemental proceedings," and the pleading stage of this case has long passed. Erikson offers no authority to support the notion that a "supplemental pleading" may be offered to cover post-judgment fees, nor could we locate any.

Rockstad's bankruptcy proceeding, which we VACATE.