Timothy J. CRISSEY and Carol W. Crissey, Appellants,

v.

ALASKA USA FEDERAL CREDIT UNION, Appellee.

No. S–3835.

Supreme Court of Alaska.

May 24, 1991.

---

Steven J. Shamburek, Farleigh & Shamburek, Anchorage, for appellants.

James M. Gorski, Hughes, Thorsness, Gantz, Powell & Brundin, Anchorage, for appellee.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

BURKE, Justice.

This appeal requires us to consider the lawfulness of late fees that a federally chartered credit union assessed on the delinquent installment payments of a loan. We find that federal law governs the permissibility of the late fees at issue and that no claim under any applicable federal law on late fees is before us. We also find that even if we were to consider this case, in the alternative, as one properly pleaded under federal usury laws, there was no genuine issue of material fact before the superior court as to whether the interest charged was usurious. Accordingly, we affirm the superior court's entry of summary judgment.

### I

In November 1981, Timothy and Carol Crissey borrowed $50,000 from Alaska U.S.A. Federal Credit Union (Alaska USA), a federally chartered credit union. The Crisseys executed a promissory note for the loan and secured the note with a deed of trust on their family home. The Crisseys agreed to repay the $50,000 in monthly installments over a period of twelve years, at an interest rate of seventeen percent (17%). Each monthly installment except the last was to be $815.96.

The "Deed of Trust and Assignment of Rents" that the Crisseys signed provided:

(C) In the event that any payment or portion thereof shall become due and remain unpaid for a period in excess of six (6) days, Trustor agrees to pay a late charge in the amount [sic] twenty percent (20%) of the interest due *so long as default continues*, if charged by the Beneficiary, to cover the extra expense of handling delinquent accounts.

(Emphasis added.) The disclosure statement Alaska USA prepared for the Crisseys, pursuant to truth in lending laws, included a slightly different version of the late fee provision:

Loans delinquent 7 days or more will be assessed a late charge of 20 per cent of the interest due with a minimum of 5 cents.

Additionally, Alaska USA's actual practice of assessing late fees in 1981 was slightly different than either of the formal versions: Alaska USA assessed only a flat fee of $25, instead of "(20%) of the interest due," when a payment was not too far in arrears.

The Crisseys were slightly delinquent in payment fairly often from November 1981 to August 1985, and Alaska USA's records show that it charged the Crisseys the flat, $25 late fee some eighteen times during that period. The Crisseys' payment pattern changed in late 1985, however, when they failed to make any payments in September and October. They finally made

their next payment on November 29, 1985. The accrued interest due on the missed payments had grown, over the ninety-eight day delinquency period, to $2,004.74.[1] Alaska USA assessed a late fee of twenty percent of that amount ($400.95) against the Crisseys' November 1985 payment. Thus, $400.95 of the Crisseys' $815.96 November payment went to pay the late fee. The remaining $415.01 defrayed the $2,004.74 accrued past due interest. The principal outstanding did not diminish at all.

During the next year, the Crisseys generally made regular payments every month. Alaska USA treated each of these payments as late, since the Crisseys still had not made up the payments they missed in September and October 1985. For a full year, then, Alaska USA deducted a large part of the Crisseys' monthly payments to pay a new late fee, and a large part to pay interest due. As a result, during this year the Crisseys' payments reduced their outstanding principal by only $29.39. Finally, in December 1986 the Crisseys made up the two payments they had missed in 1985. After that, the Crisseys paid promptly; occasionally they paid more than the monthly amount due.

At various times during 1988, Mr. Crissey attempted to renegotiate the loan with Alaska USA. Alaska USA refused to renegotiate. Finally, in September 1988, the Crisseys told Alaska USA that they considered the credit union's charges usurious. The Crisseys then ceased to make payments.

Alaska USA instituted nonjudicial foreclosure proceedings on the Crissey home in early 1989. The Crisseys attempted to enjoin the foreclosure; the superior court denied an injunction. The Crisseys sued for damages, alleging that Alaska USA charged them usurious interest under Alaska law. The Crisseys later amended their complaint to include an action for "pain and suffering."

Alaska USA moved for summary judgment. The Crisseys opposed the motion, relying mainly upon an affidavit from Mr. Crissey that alleged "[a]s the loan stood at the time of foreclosure, [Alaska USA] had charged $54,725.41 on a $50,000.00 loan over a six year period. This represents a profit in excess of 25% on the original loan, and far in excess of the stated contract rate of 17%." Mr. Crissey's affidavit included no supporting documentation and no arithmetic explanation for its conclusions.

With its motion for summary judgment, Alaska USA submitted records showing that the Crisseys paid a total of $67,265.08 on their loan. Of that amount, $51,989.81 was interest; $13,191.38 was principal. Late fees accounted for $2,083.89 of the amount paid; $1,608.89 of the late fee amount had been calculated according to the formula "20% of interest due so long as default continues."

On January 24, 1990, the superior court, Judge J. Justin Ripley, heard argument from the parties and entered an order of summary judgment for Alaska USA. The superior court denied the Crisseys' motion to reconsider and this appeal followed.

## II

■■ When reviewing an appeal from summary judgment, we determine whether there was a genuine issue of material fact before the trial court and whether the moving party was entitled to judgment on the law applicable to the established facts. *Providence Washington Ins. Co. v. Fireman's Fund Ins. Cos.,* 778 P.2d 200, 203 (Alaska 1989). In making these determinations, we draw all reasonable inferences of fact from proffered materials against the moving party and in favor of the nonmoving party. *Id.*

---

1. Alaska USA's records essentially support its calculation of the interest due. According to those records, in August 1985, the principal outstanding amounted to $43,921.53. Seventeen percent (17%) per year interest equals roughly .0004657% per day (17% divided by 365). From the date of the Crisseys' August 23, 1985 payment to the date of their next payment, November 29, 1985, 98 days passed. Ninety-eight multiplied by .0004657 multiplied by $43,921.53, yields $2,004.52. Alaska USA's figure is $2,004.74.

In this case, the Crisseys present nine points on appeal. In actuality, the only questions before us are: (1) whether Alaska USA's late fees were lawful; and, alternatively, (2) whether Alaska USA's late fees may be a form of interest sufficiently large to make the total interest charged the Crisseys usurious.[2]

■ The National Credit Union Administration (NCUA) regulates federally chartered credit unions. *See* 12 U.S.C. § 1752a(d) (1988) (rule making powers of NCUA Board). The current version of the NCUA regulation governing loans to credit union members includes a subsection titled "(b) *Relation to other laws*—(1) *Preemption of state laws.*" 12 C.F.R. § 701.21(b)(1) (1990). That part of the section states, quite clearly, that the NCUA regulation

> preempts any state law purporting to limit or affect:
>
> (i)(A) Rates of interest and amounts of finance charges....
>
> ....
>
> (B) Late charges....

*Id.*

In an attempt to refute the strong preemptive language of this regulation, the Crisseys bring our attention to *United States v. Alabama*, 434 F.Supp. 64 (M.D. Ala.1977). The court there found that the

Federal Credit Union Act did not preempt the Alabama Uniform Disposition of Unclaimed Property Act. *Id.* at 67. The Crisseys assert that *United States v. Alabama* is still good law. It well may be.[3] Whether federal law preempts any state law governing disposition of lost or abandoned property, however, has no bearing on the present case. Plainly, federal law *does* preempt any state law that might determine the permissibility of a federally chartered credit union's late charges.[4]

The Crisseys have not asserted that Alaska USA's late charges, if considered simply as late charges, violate federal laws or regulations. Rather, the Crisseys' argument on this point relies solely upon inapposite Alaska statutes.[5] Based on the arguments before it, the superior court thus correctly granted Alaska USA's motion for summary judgment on all of the Crisseys' claims that directly challenged the lawfulness of the late charges.

■ The Crisseys also assert, as an alternative argument, that Alaska USA's late charge policy, as implemented against them, caused them to pay far in excess of the maximum allowable interest rate. The Crisseys rather vaguely argue that their claim on this point arises under the "common law" of usury.[6] It is clear that once

**2.** Of the Crisseys' nine points on appeal, only one does not fall within the two questions we have determined to be before us. That point involves the Crisseys' claim that Alaska USA violated the covenant of good faith and fair dealing by refusing to renegotiate the terms of the Crisseys' loan. That particular claim is utterly without merit.

**3.** *Compare* 12 C.F.R. § 701.21(b)(1) (1990) (expressly preempting state law affecting interest, finance charges, late charges, etc.) *with id.* at (b)(2) ("it is not the Board's intent to preempt state laws that do not affect rates, terms of repayment and other conditions described above in (b)(1)").

**4.** Our own research suggests that the NCUA regulates the late charges of federally chartered credit unions through a by-law mechanism. *See* 12 C.F.R. §§ 701.3, 701.4 (1990); *see also* NCUA, *Federal Credit Union Bylaws* art. XII, § 8 (rev. Dec. 1987); NCUA, *Federal Credit Union Standard Bylaw Amendments and Guidelines* art. XII, § 8, at 12–13 (rev. May 1987). We also find some indication that one late-fee formula ap-

proved by the NCUA at the time the Crisseys borrowed from Alaska USA was "20% of interest due." *See* Culhane & Kaplinsky, *Trends Pertaining to the Usury Laws*, 38 Bus.Law. 1329, 1345 & n. 91 (1983).

**5.** For example, in their brief to this court the Crisseys cite AS 45.45.010. This statute imposes a legal rate of interest for loans of $25,000 or less and bars lending institutions from requiring or accepting "any percent of ownership for profits above its interest rate." AS 45.45.010(b) & (f). This statute also states that "[i]f the limitations on interest rates provided for in this section are inconsistent with the provisions of any other statute covering maximum interest, service charges or discount rates then the provisions of the other statute prevail." *Id.* at (h).

**6.** In *Fikes v. First Fed. Savings & Loan Ass'n of Anchorage*, 533 P.2d 251 (Alaska 1975), we explained:

> The essential elements of usury are: (1) an agreement to lend money or its equivalent or

again the Crisseys have overlooked the preemptive effect of federal law.

Congress enacted a usury statute applicable to federally chartered credit unions in 1980. Depository Institutions Deregulation and Monetary Control Act of 1980, Public L. No. 96–221, § 523, 94 Stat. 132, 166. This statute provides in part:

> If [an impermissible] ... rate of interest has been paid, the person who paid it may recover, in a civil action commenced in a court of appropriate jurisdiction not later than two years after the date of such payment, an amount equal to twice the amount of interest paid from the credit union taking or receiving such interest.

12 U.S.C. § 1785(g)(2). This statute also explicitly preempts our own state usury laws as they otherwise might apply to the Crisseys' loan. *See id.* at (g)(1).[7]

■ The Crisseys could have brought their usury claim in state court and under section 1785(g). *See id.; see also Barany v. Buller,* 670 F.2d 726, 732 & n. 13 (7th Cir.1982); *Harrington v. Philadelphia City Employees Fed. Credit Union,* 243 Pa.Super. 33, 364 A.2d 435, 439–40 (1976). They did not do so. Even if we were willing to consider the Crisseys' usury action in this case as one under section 1785(g), however, we would conclude that they had not established a claim of usury.

One element of a cause of action for usury is "greater compensation for making the loan or agreeing to forbear" than the applicable usury law allows. *Fikes v. First*

*Fed. Savings & Loan Ass'n of Anchorage,* 533 P.2d 251, 263 (Alaska 1975). To begin with, we believe, and the Crisseys appear to agree that at all times relevant to this case, the maximum allowable interest or compensation rate for federally chartered credit unions was the rate imposed by the NCUA in its regulations. Those regulations provided that

> from December 3, 1980 through May 14, 1987, a Federal credit union may extend credit to its members at rates not to exceed 21 percent per year on the unpaid balance inclusive of all finance charges. Loans and line of credit balances existing on or before May 14, 1987, may continue to bear rates of interest of up to 21 percent per year after May 14, 1987.

12 C.F.R. § 701.21(c)(7)(ii) (1990). The Crisseys contracted to pay 17% interest on their loan in November 1981. Thus, on its face Alaska USA's rate was not greater than the permissible maximum of 21%. But the Crisseys contend that Alaska USA's nominal interest rate was only part of the actual compensation charged. The Crisseys argue that Alaska USA's late charges also constituted a form of compensation and that the combination of actual interest and late fees amounted to a total rate of compensation for the loan greater than 21%.

As to the first prong of the Crisseys' argument, in *Fikes* we held that certain charges assessed against a borrower, such as "service fees," might qualify as interest for purposes of a usury analysis. *Fikes,* 533 P.2d at 265 & n. 27. In *Fikes,* how-

---

to forbear requiring repayment for a period of time; (2) a borrower's obligation to repay absolutely, not upon some contingency; (3) greater compensation for making the loan or agreeing to forbear than allowed *by the applicable state constitution or usury statute;* and (4) an intention to violate the usury prohibition.

*Id.* at 263 (emphasis added). Contrary to the Crisseys' assertions, a usury claim appears to require a statutory basis. Notably enough, since legislative amendment in July 1981, our state usury statute has applied only to loans of $25,000 or less (and then only when no other statute preempts the claim). AS 45.45.010 (amended Ch. 94, § 1, SLA 1981 (effective July 27, 1981)). Consequently, in November 1981, when the Crisseys entered into their $50,000

loan agreement with Alaska USA, no state statute governed the interest rate.

7. *See also Boyles v. Smith,* 759 P.2d 518, 521 (Alaska 1988) (Alaska usury law preempted by 12 U.S.C. § 86a, federal usury statute governing savings and loans, which was also enacted as part of the Depository Institutions Deregulation and Monetary Control Act of 1980); H.R.Conf. Rep. No. 842, 96th Cong., 2d Sess. 78, *reprinted in* 1980 U.S.Code Cong. & Admin.News 298, 308 ("State usury ceilings on all loans made by Federally insured depository institutions (except national banks) ... will be permanently preempted [by the DIDMC Act of 1980] subject to the right of affected states to override at any time...."). Our legislature has expressly declined to override the federal usury laws of 1980. *See* AS 45.45.010(h).

ever, we did not consider whether late fees might ever qualify as interest. *See id.* As a result, the question is one of first impression in Alaska.[8] Because of the factual posture of this case, however, we need not consider that legal question now.

The Crisseys did not proffer any material in their opposition to summary judgment to indicate that, at any time, the total amount of interest and late fees Alaska USA charged them could *possibly* amount to a compensation rate greater than 21%.[9] Rather, Mr. Crissey's affidavit, the sole basis for the Crisseys' argument on this point, offers the bare conclusion that Alaska USA charged the equivalent of 25% compensation for the loan, without offering one iota of specific, factual, explanatory foundation for that conclusion. The affidavit thus falls far short of meeting the requirements of Rule 56. *See* Alaska R.Civ.P. 56(e) (affidavits in opposition to motion for summary judgment "shall set forth such facts as would be admissible in evidence" and these facts must be "specific ... showing that there is a genuine issue for trial"). The Crisseys simply did not present the superior court with a genuine issue of material fact on the crucial compensation-rate element of their usury action. Accordingly, the superior court decision entering summary judgment in favor of Alaska USA is AFFIRMED.

---

**8.** Most jurisdictions treat late fees as noninterest, on the theory that late fees are not payments to secure extension of credit, but rather are penalty payments accruing only because of action solely within the borrower's control. *E.g., O'Connor v. Televideo System, Inc.,* 218 Cal.App.3d 709, 267 Cal.Rptr. 237, 241–42 (1990). A few courts have taken the contrary view. *E.g., Wright Ins. Agency v. Scott,* 371 So.2d 1207, 1208 (La.App.1979).

**9.** Simple arithmetic suggests otherwise. (Twenty percent late fee on 17% interest due equals 3.4% of interest due; combining that late fee and interest due yields 20.4%.)