*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| WILLIAM C. COX, | ) | |
| | ) | Supreme Court No. S-16570 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-15-10101 CI |
| v. | ) | |
| | ) | O P I N I O N |
| ESTATE OF STEVE COOPER and | ) | |
| DOROTHY COOPER, | ) | No. 7290 – September 14, 2018 |
| | ) | |
| Appellees. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, William F. Morse, Judge.

Appearances: Clayton H. Walker, Jr., and James L. Gaines, Alaska Law Offices, Inc., Anchorage, for Appellant. Chris D. Gronning, Bankston Gronning O'Hara, P.C., Anchorage, for Appellees.

Before: Stowers, Chief Justice, Winfree, Maassen, Bolger, and Carney, Justices.

STOWERS, Chief Justice.

## I.      INTRODUCTION

This case concerns the interpretation of Alaska's usury statute, AS 45.45.010. The question on appeal is whether the statute provides for a maximum interest rate on contract or loan commitments in which the principal amount exceeds $25,000. William C. Cox argues that the statute provides for a maximum interest rate

of 10.5% on all loans in which the principal exceeds $25,000. The Estate of Steve Cooper and Dorothy Cooper (collectively "the Coopers")[1] argue that parties may contract for any interest rate if the principal of the contract or loan commitment exceeds $25,000.

The superior court initially agreed with Cox that loans over $25,000 had a maximum legal interest rate of 10.5%, but the Coopers moved for reconsideration and provided the court with statutory history. This statutory history convinced the court that the Coopers were correct and that AS 45.45.010 did not limit the interest rate for contract or loan commitments over $25,000. Cox appeals.

Cox also challenges the superior court's decision to consider statutory history when ruling on the Coopers' motion for reconsideration and the superior court's decision to grant the Coopers reasonable attorney's fees under Alaska Civil Rule 82.

We affirm the superior court's ruling in all respects.

## II.    FACTS AND PROCEEDINGS

### A.    Facts

The material facts in this case are undisputed. In October 2008 the Coopers loaned Cox $325,000. Cox executed a deed of trust note with a 20% annual interest rate to be repaid by April 2009. He provided his house as security for the note. In June 2010 the Coopers lowered the interest rate to 8% and extended the term to April 2011. In July 2015 the trustee gave notice of default and sale and foreclosure, providing for a public sale in October 2015. According to the notice, Cox owed a principal sum of $315,500 plus interest accrued under the 20% rate of $98,450.72 and under the 8% rate of $46,909.19.

---

[1]    Steve Cooper died after the complaint in this case was filed. We use "the Coopers" to refer to both Steve and Dorothy Cooper and the Estate of Steve Cooper and Dorothy Cooper.

## B. Proceedings

Three days before the foreclosure sale was scheduled Cox filed a complaint, alleging that the 20% interest rate was usurious under AS 45.45.010 and seeking forfeiture of the remaining interest owed pursuant to AS 45.45.040.[2]  The next day Cox recorded a notice of lis pendens, and the trustee postponed the sale.[3]

The Coopers moved to dismiss, and Cox moved for summary judgment. The superior court ruled in favor of Cox on the usury issue, concluding that the maximum legal interest rate on loans over $25,000 was 10.5%.  The court therefore denied the Coopers' motion to dismiss and granted Cox's motion for summary judgment with respect to the usury issue.

The Coopers sought reconsideration of the court's decision.  They contended that the superior court had misapplied AS 45.45.010 and our decisions in *Riley v. Northern Commercial Co.*[4] and *Rockstad v. Erikson*,[5] as well as overlooking the legislative history and the longstanding practice of the lending industry.  They explained

---

[2]  Cox also requested a credit for double the interest paid under AS 45.45.030, which provides that a person may "recover from the person receiving [usurious interest] double the amount of the interest received or collected."  The superior court ruled that Cox was not entitled to recovery under this statute because he had not paid all of the interest he owed under the allegedly usurious rate.  Cox does not appeal this ruling.

[3]  Cox filed an amended complaint in January 2016, adding two claims. First, he claimed that the trustee demanded an excessive amount of money to cure the alleged default in violation of AS 34.20.070(b).  The sole basis for this claim was that the amount owed was excessive because it was calculated with a usurious interest rate.  This claim, therefore, turned on Cox's usury claim.  Cox does not mention this claim on appeal.  Second, Cox claimed that the statute of limitations had run, but he later abandoned this claim.

[4]  648 P.2d 961 (Alaska 1982).

[5]  113 P.3d 1215 (Alaska 2005).

that "[i]n all candor, [the court's] decision was completely unexpected." The Coopers asserted that "[t]he significance of [the] Court's decision to the lending industry [could not] be overstated" because "[i]t mean[t], among other things, that all existing loans made in Alaska . . . where the loan exceeded $25,000 and the interest rate exceeded 10.5% [were] usurious." They also said that "the legislative history presented to [the court] ha[d] been incomplete, and in some cases distorted" and that they "ha[d] undertaken a more complete review of the legislative history."

In support of their motion, the Coopers filed an affidavit of a real-estate appraiser as to lending industry practice, 143 pages of photocopies of former statutes, and a listing and graph of federal fund rates dating back to 1954. The superior court invited Cox to respond and the Coopers to reply to that response. In its order inviting further briefing the court explained that it would "consider the new material about legislative history" but would "not consider the new evidence or argument about Alaska's lending market." Cox responded to the Coopers' motion for reconsideration and attached one interest-rate graph. The Coopers replied, attaching 59 pages of statutory history.

The superior court granted the motion for reconsideration. It first reiterated that "while it would consider . . . new material about legislative history, it would not consider the proffered new evidence or argument about Alaska's lending market." It then explained that the Coopers' presentation of the statutory history convinced the court that they were correct and that the statute applies only where there is no rate set by contract or the loan does not exceed $25,000. It also noted that dicta in our case law supported this result. The Coopers then moved for summary judgment and the superior court granted the motion.

The Coopers moved for an award of attorney's fees under Alaska Civil Rule 82. Cox opposed, characterizing the Coopers' request for attorney's fees as a

request for a deficiency judgment. He argued that the Coopers had elected to sell the home through a non-judicial foreclosure sale and that AS 34.20.070, the statute authorizing non-judicial foreclosure sales, allows for recovery of attorney's fees.[6] Since a separate statute allowed for recovery of attorney's fees, Cox argued Rule 82 did not apply. The Coopers replied, clarifying that they were not requesting a deficiency judgment, that they were only requesting attorney's fees incurred during their defense of Cox's lawsuit, and that they were not requesting attorney's fees incurred in conducting the foreclosure. The superior court awarded the Coopers attorney's fees.[7]

## III. STANDARD OF REVIEW

"The interpretation of a statute is a legal question which we review de novo. 'We interpret . . . Alaska law according to reason, practicality, and common sense, taking into account the plain meaning and purpose of the law as well as the intent of the drafters.' "[8]

---

[6] AS 34.20.070(b) ("[I]f the default has arisen by failure to make payments required by the trust deed, the default may be cured and sale under this section terminated by payment of the sum then in default, other than the principal that would not then be due if no default had occurred, and attorney and other foreclosure fees and costs actually incurred by the beneficiary and trustee due to the default.").

[7] The Coopers requested an enhanced attorney's fees award under Rule 82(b)(3). Cox opposed this request. Cox also argued that the Coopers were not entitled to the amount of fees the Coopers requested and that Cox was a public interest litigant. The superior court did not grant the requested enhancement; it awarded attorney's fees pursuant to the schedule in Rule 82(b)(2) on the amount of fees the Coopers requested. With regard to attorney's fees, Cox appeals only the legal question whether attorney's fees could be awarded under Rule 82. He does not appeal the amount of attorney's fees awarded.

[8] *In re Estate of Baker*, 386 P.3d 1228, 1231 (Alaska 2016) (omission in original) (first citing *Jimerson v. Tetlin Native Corp.*, 144 P.3d 470, 472 (Alaska 2006);
(continued...)

We review the decision to grant a motion for reconsideration for abuse of discretion.[9] "An abuse of discretion exists if we are 'left with a definite and firm conviction on the whole record that the trial judge has made a mistake.' "[10]

"We review an award of attorney's fees for abuse of discretion, but 'the determination of which statute or rule applies to an award of attorney's fees is a question of law that we review de novo.' "[11]

## IV.   DISCUSSION

### A.   The Interest Rate At Issue In This Case Was Not Usurious.

Alaska Statute 45.45.010 contains two subsections relevant to this case. These provide:

> (a) The rate of interest in the state is 10.5 percent a year and no more on money after it is due except as provided in (b) of this section.
>
> (b) Interest may not be charged by express agreement of the parties in a contract or loan commitment that is more than the greater of 10 percent or five percentage points above the annual rate charged member banks for advances by the 12th Federal Reserve District on the day on which the contract or loan commitment is made.  A contract or loan commitment in which the principal amount exceeds $25,000

---

[8]     (...continued)
then quoting *Estrada v. State*, 362 P.3d 1021, 1023 (Alaska 2015)).

[9]     *See Alaskan Adventure Tours, Inc. v. City and Borough of Yakutat*, 307 P.3d 955, 959-60 (Alaska 2013) (citing *Smith v. Groleske*, 196 P.3d 1102, 1105 (Alaska 2008)); *Boone v. Gipson*, 920 P.2d 746, 748-49 (Alaska 1996).

[10]     *Alaskan Adventure Tours*, 307 P.3d at 959-60 (quoting *Babinec v. Yabuki*, 799 P.2d 1325, 1332 (Alaska 1990)).

[11]     *Martin v. Martin*, 303 P.3d 421, 424 (Alaska 2013) (quoting *McDonald v. Trihub*, 173 P.3d 416, 420 (Alaska 2007)).

is exempt from the limitation of this subsection.[12]

Cox argues that subsection (a) provides the general interest rate for all loans not covered by subsection (b). And he contends that the second sentence of subsection (b) provides that subsection (b) does not cover loans greater than $25,000. Thus, he argues, subsection (a) must apply to all loans in which the principal exceeds $25,000. The Coopers argue that subsection (b) governs all loans where there has been a contracted-for interest rate. They contend that if the principal of the contract or loan commitment exceeds $25,000, then the parties may contract for any interest rate.

Although we have never directly addressed this question, our cases strongly support the Coopers' interpretation of the usury statute. In *Crissey v. Alaska USA Federal Credit Union* we held that federal usury law, not state usury law, applied to loans issued by federally chartered credit unions.[13] But in two footnotes we expressed our opinion that state usury law would not have covered the loan agreement at issue even if it were not preempted by federal law. In the first footnote we explained, "[I]n their brief to this court the Crisseys cite AS 45.45.010. This statute imposes a legal rate of interest for loans of $25,000 or less . . . ."[14] And in the second footnote we said:

---

[12] AS 45.45.010. This is the current version of AS 45.45.010, which has been in effect since 2011. *See* ch. 29, § 1, SLA 2011. At the time the parties in this case executed the deed of trust and promissory note, the first sentence of subsection (b) read, "No interest may be charged by express agreement of the parties in a contract or loan commitment which is more than five percentage points above the annual rate charged member banks for advances by the 12th Federal Reserve District on the day on which the contract or loan commitment is made." Former AS 45.45.010(b) (1981). The remainder of subsections (a) and (b) were the same. Because this change does not affect the analysis of this case, we use the current version of the statute.

[13] 811 P.2d 1057, 1060-61 (Alaska 1991).

[14] *Id.* at 1060 n.5.

Notably enough, since legislative amendment in July 1981, our state usury statute has applied only to loans of $25,000 or less (and then only when no other statute preempts the claim). Consequently, in November 1981, when the Crisseys entered into their $50,000 loan agreement with Alaska USA, no state statute governed the interest rate.[15]

In *Rockstad v. Erikson* we considered whether one promissory note for $26,000 that was accompanied by two checks constituted one loan or two smaller loans for the purposes of AS 45.45.010(b).[16] Erikson argued that there had been one loan for over $25,000, so the loan was outside the reach of AS 45.45.010.[17] Rockstad argued that AS 45.45.010 applied because there were two separate loans, each under $25,000.[18] We concluded that there had only been one loan for over $25,000, which meant the loan was not usurious.[19]

Finally, in *Bibi v. Elfrink* we considered a loan that originally was under $25,000 but was modified multiple times and rose above $25,000.[20] We affirmed the superior court's determination that there had only been one loan.[21] "Consequently, when the March 2008 modification brought the single loan's principal over $25,000, the

---

[15]    *Id.* at 1060 n.6.

[16]    113 P.3d 1215, 1221-22 (Alaska 2005).

[17]    *Id.* at 1221.

[18]    *Id.*

[19]    *Id.* at 1222; *id.* at 1217 ("Because we hold that as a matter of law the parties' transaction was not usurious, we affirm.").

[20]    408 P.3d 809, 812 (Alaska 2017).

[21]    *Id.* at 821.

interest rate cap no longer applied."[22] Because Bibi had "paid her entire loan principal plus all interest, both legal and usurious, . . . under AS 45.45.030, [she was] entitled to double whatever portion of these payments constituted usurious interest, that is, interest above the statutory maximum at the time."[23] We explained that on remand the superior court should "calculate what amount of Bibi's total payments were applied toward usurious interest generated by the original loan and the two modifications that preceded the principal's rise over $25,000 in March 2008, *the point at which the usury statute ceased to apply*."[24] But we cautioned that "applying a legal hypothetical interest rate from the beginning may push the date at which the loan's principal would have exceeded $25,000 past March 2008, *thereby extending the period to which the usury statute applied to the loan*. If so, the new date should be taken into account when calculating Bibi's recovery."[25]

Thus, while we have never been called on to decide whether the usury statute contains a maximum interest rate for loans over $25,000, we have consistently assumed that it does not. A close examination of the language of AS 45.45.010 and the legislative history of the statute support our prior statements on this issue:  there is no maximum legal interest rate under AS 45.45.010 for contract or loan commitments with express interest rates in which the principal exceeds $25,000.

" 'When we construe a statute, we look at both its plain language and . . . its legislative history.'  We use a sliding scale approach under which '[t]he plainer the statutory language is, the more convincing the evidence of contrary legislative purpose

---

[22]    *Id.*

[23]    *Id.* at 824.

[24]    *Id.* (emphasis added).

[25]    *Id.* (emphasis added).

or intent must be.' '[W]henever possible, we construe a statute in light of its purpose.' "[26]

The simplest interpretation of AS 45.45.010 is that subsection (b) governs all contract or loan commitments with express interest rates. By its plain text the first sentence of the subsection applies to all contract or loan commitments with express interest rates. The second sentence then exempts certain contract or loan commitments, those with a principal exceeding $25,000, from the *limitation* in the first sentence — that is, from the maximum interest rate. Thus contract or loan commitments with principals over $25,000 may contain any express interest rate. Cox's reading requires taking the interest rate in subsection (a), which provides the interest rate for money after it is due and which contains no mention of contract or loan commitments, and making it the maximum interest rate only for contract or loan commitments over $25,000, when contract or loan commitments are otherwise governed exclusively by subsection (b). The Coopers' reading is more persuasive.

The statutory history of AS 45.45.010 confirms this reading. The original statute from 1900 stated:

> The rate of interest in the District shall be eight per centum per annum, and no more, on all moneys after the same become due; on judgments and decrees for the payment of money; on money received to the use of another and retained beyond a reasonable time without the owner's consent, expressed or implied, or on money due upon the settlement of matured accounts from the day the balance is ascertained; on money due or to become due where there is

---

[26]      *Cent. Recycling Servs., Inc. v. Municipality of Anchorage*, 389 P.3d 54, 57 (Alaska 2017) (alterations in original) (first quoting *Alaskans for a Common Language, Inc. v. Kritz*, 170 P.3d 183, 192 (Alaska 2007); then quoting *Pebble P'ship ex rel. Pebble Mines Corp. v. Parnell*, 215 P.3d 1064, 1075-76 (Alaska 2009); and then quoting *Kritz*, 170 P.3d at 192-93).

> a contract to pay interest and no rate specified. But on contracts interest at the rate of twelve per centum may be charged by express agreement of the parties, and no more.[27]

Thus, the statute consisted of two sentences, the first addressing situations where there was no agreed-upon interest rate and the second addressing contract or loan commitments where there was an express interest rate. As the following recitation will show, these two sentences would become subsections (a) and (b), and this basic division still exists in the current statute.

The territorial legislature made minor changes to the statute in 1913, 1933, 1935, and 1939, but there were no relevant changes to the structure of the statute.[28] The statute first significantly changed in 1962 with the formal revision of the Alaska Statutes.[29] The revised statute was divided into subsections. The first sentence became subsection (a), and the categories covered in the first sentence were numbered (1) through (5). The second sentence became subsection (b) and the organization of the sentence was changed slightly. After the 1962 revision AS 45.45.010 read:

> (a) The rate of interest in the state is six per cent a year and no more on (1) money after it is due; (2) judgments and decrees for the payment of money, except that a judgment or decree founded on a contract in writing providing for the payment of interest until paid at a specified rate exceeding six per cent a year and not exceeding 10 per cent a year bears interest at the rate specified in the contract if the interest rate is set out in the judgment or decree; (3) money received to the use of another and retained beyond a reasonable time without the owner's express or implied consent; (4) money due upon

---

[27]     § 684 Compiled Laws Annotated (1913).

[28]     *See* ch. 17, § 1, SLA 1913; ch. 48, § 1, SLA 1933; ch. 32, § 1, SLA 1935; ch. 31, § 1, SLA 1939.

[29]     Former AS 45.45.010 (1962).

the settlement of matured accounts from the day the balance is ascertained; or (5) money due or to become due where there is a contract to pay interest and no rate is specified.

(b) Interest at the rate of eight per cent may be charged by express agreement of the parties in a contract.

But in dividing the statute into subsections and modernizing the language, there is no indication that the legislature intended to make any substantive changes. The maximum interest rate on contract or loan commitments where there was an express interest rate was governed entirely by the new subsection (b), while interest rates in other areas were governed by subsection (a).

The legislature made a minor change in 1968,[30] but then made significant changes in 1969. In 1969 it first repealed subsection (a)(2) dealing with "judgments and decrees for the payment of money."[31] At the same time, it amended AS 09.30.070 to cover interest on judgments.[32] Second, the legislature significantly rewrote subsection (b) and added a subsection (c) to the statute.[33] For the first time, subsection (b) tied the maximum contract interest rate to the Federal Reserve rate, making it four percentage points higher than the Federal Reserve discount rate for the 12th Federal Reserve District, in effect until the end of 1970 when it would then reset to eight percent.[34] The new subsection (c) for the first time created an exception to the usury statute for large loans, specifically for loans over $500,000 processed through certain financial

---

[30]    Ch. 143, § 20, SLA 1968.

[31]    Ch. 69, § 2, SLA 1969.

[32]    Ch. 69, § 1, SLA 1969.

[33]    *See* ch. 94, §§ 1-2, SLA 1969.

[34]    Ch. 94, § 1, SLA 1969.

institutions, in effect until the end of 1970.[35]  In 1970 the Legislature extended the tie-

---

[35]      Ch. 94, § 2, SLA 1969.  In 1969 AS 45.45.010 read:

        (a) The rate of interest in the state is six per cent a year and no more on (1) money after it is due; (2) Repealed by § 2 ch 69 SLA 1969; (3) money received to the use of another and retained beyond a reasonable time without the owner's express or implied consent; (4) money due upon the settlement of matured accounts from the day the balance is ascertained; or (5) money due or to become due where there is a contract to pay interest and no rate is specified.

        (b) Until December 31, 1970, during any calendar quarter no interest may be charged by express agreement of the parties in a contract which is more than four percentage points above the federal reserve discount rate for the 12th Federal Reserve District that prevailed on the first day of the month preceding the commencement of that calendar quarter. Notice of the prevailing quarterly rate shall be provided by the Department of Commerce.  Conventional mortgage loans covering a one- to four-family dwelling entered into under provisions of this subsection may be prepaid without penalty. After December 31, 1970, interest at the rate of eight per cent may be charged by express agreement of the parties in a contract after that date.

        (c) The maximum rate of interest specified in this section does not apply to transactions involving loans processed through Alaska financial institutions when there is participation by corresponding banks or institutional lenders in other states or countries because the amount of the transaction exceeds the loan limitations on state banks under AS 06.05.205(b) and on national banks under 12 U.S.C. 84 and the regulations and rulings under that section and to those loans made by mutual savings banks, state chartered savings and loan associations, and federally chartered savings and loan associations which exceed 10 per cent of surplus,

(continued...)

in to the Federal Reserve rate in subsection (b) until February 15, 1972 and removed the expiration provision from subsection (c).[36]

In 1973 the legislature again significantly amended AS 45.45.010. Subsection (b) of the 1973 version of the usury law provided for an eight percent cap, except on loans made before April 15, 1975, for which the maximum rate was either four or four and one-half percentage points above the Federal Reserve rate.[37] The 1973 amendment repealed subsection (c).[38] It also added subsections (d) through (h), which are not directly relevant to this case, except that subsection (e) affirmatively stated what subsection (b) implied, that "[i]nterest at a rate not to exceed eight per cent may be charged by express agreement of the parties in a contract or loan commitment dated after April 14, 1975."[39]

---

[35] (...continued)
undivided profits and reserves for loan losses, and to those loans where the mortgagee is not a bank, mutual savings bank, or savings and loan association, and where the loan exceeds $500,000. This provision remains in effect until December 31, 1970.

[36] Ch. 239, §§ 1-2, SLA 1970.

[37] Ch. 84, § 1, SLA 1973.

[38] Ch. 84, § 3, SLA 1973.

[39] Ch. 84, § 2, SLA 1973. In 1973 AS 45.45.010 read, in relevant part, as follows:

(a) The rate of interest in the state is six per cent a year and no more on (1) money after it is due; (2) Repealed by § 2 ch 69 SLA 1969; (3) money received to the use of another and retained beyond a reasonable time without the owner's express or implied consent; (4) money due upon the

(continued...)

In 1974 the legislature introduced the language at the core of this case. The

---

[39]    (...continued)
settlement of matured accounts from the day the balance is ascertained; or (5) money due or to become due where there is a contract to pay interest and no rate is specified.

(b) No interest may be charged by express agreement of the parties in a contract or loan commitment which is more than eight per cent a year, except that the eight per cent a year rate may be exceeded under the following circumstances:

(1) in a contract or loan commitment not involving real estate or in a contract or loan commitment covering a one- to four-family dwelling, dated after April 29, 1973 and before April 15, 1975, the interest rate may not exceed four percentage points above the annual rate charged member banks for advances by the 12th Federal Reserve District that prevailed on the first day of the month preceding the commencement of the calendar quarter during which the contract or loan commitment is made;

(2) in a contract or loan commitment involving real estate or secured by a real estate mortgage or trust deed, not covered in (1) of this subsection, and dated after April 29, 1973 and before April 15, 1975, the interest rate may not exceed four and one-half percentage points above the annual rate charged member banks for advances by the 12th Federal Reserve District that prevailed on the first day of the month preceding the commencement of the calendar quarter during which the contract or loan commitment is made.

(c) Repealed by § 3 ch 84 SLA 1973.

. . . .

(e) Interest at a rate not to exceed eight per cent may be charged by express agreement of the parties in a contract or loan commitment dated after April 14, 1975.

1974 version of subsection (b) contained two sentences.[40] The first made permanent the reference to the Federal Reserve rate, setting the maximum interest rate for all contract or loan commitments with express interest rates at "four percentage points above the annual rate charged member banks for advances by the 12th Federal Reserve District that prevailed on the 25th day of the month preceding the commencement of the calender quarter during which the contract or loan commitment is made."[41] The second provided, "A contract or loan commitment in which the principal amount exceeds $100,000 is exempt from the limitation of this subsection."[42]

---

[40]    Ch. 146, § 1, SLA 1974.

[41]    *Id.*

[42]    *Id.* In 1974 the relevant portions of AS 45.45.010 read:

      (a) The rate of interest in the state is six per cent a year and no more on (1) money after it is due; (2) Repealed by § 2 ch 69 SLA 1969; (3) money received to the use of another and retained beyond a reasonable time without the owner's express or implied consent; (4) money due upon the settlement of matured accounts from the day the balance is ascertained; or (5) money due or to become due where there is a contract to pay interest and no rate is specified.

      (b) No interest may be charged by express agreement of the parties in a contract or loan commitment dated after the effective date of this Act which is more than four percentage points above the annual rate charged member banks for advances by the 12th Federal Reserve District that prevailed on the 25th day of the month preceding the commencement of the calender quarter during which the contract or loan commitment is made. A contract or loan commitment in which the principal amount exceeds $100,000 is exempt from the limitation of this subsection.

                                                          (continued...)

The meaning of the second sentence of subsection (b) was clear when it was introduced in 1974: for contract or loan commitments exceeding $100,000, the parties could agree to any interest rate. As the Coopers explain, "The legislature exempted large loans 'from the limitations of this subsection' because subsection (b) was the only subsection that applied to contracts which specified interest rates. Subsection (a) did not apply to them." This is because subsection (a) still read essentially the same as it did in the original 1900 statute, listing specific circumstances in which it applied:

> The rate of interest in the state is six per cent a year and no more on (1) money after it is due; (2) Repealed by § 2 ch 69 SLA 1969; (3) money received to the use of another and retained beyond a reasonable time without the owner's express or implied consent; (4) money due upon the settlement of matured accounts from the day the balance is ascertained; or (5) money due or to become due where there is a contract to pay interest and no rate is specified.[43]

Under subsection (a) as it existed at the time, the interest rate was six percent in specific circumstances that did not include loans with express interest rates. Indeed, at no time since 1900 had the first sentence of the usury statute governed contracts with express interest rates. Thus, when the exemption in subsection (b) was introduced, it could not have reverted loans over $100,000 back to subsection (a). In short, contract and loan commitments with express interest rates and a principal amount exceeding $100,000 had no maximum interest rate under the 1974 version of AS 45.45.010.

The economic realities in 1974 also support this reading of the 1974 amendment. The Federal Reserve rate reached nearly 13% in 1974, which under

---

**42** (...continued)
Subsection (e), which had provided for an eight percent maximum interest rate on contracts after April 14, 1975, was repealed. Ch. 146, § 4, SLA 1974.

**43** Ch. 146, § 1, SLA 1974.

subsection (b) made the maximum interest rate for small loans nearly 17%.[44] But, according to Cox, the legislature intended that large loans have a maximum interest rate of only six percent, the interest rate in subsection (a) at the time. Requiring that all large loans have an interest rate so far below the market rate at the time would have dramatically discouraged lenders from issuing large business loans in the state, a result the legislature certainly did not intend.[45] Instead, given the high, fluctuating interest rates at the time, the legislature decided that people with the finances to borrow large amounts of money were best left to negotiate interest rates for themselves and that only smaller-scale borrowers who were at greater risk of falling prey to usurious lending practices would benefit from a maximum legal interest rate.

In 1976 the legislature reorganized subsection (a) in order to raise the interest rate on money after it is due to eight percent. The new subsection (a) contained two sentences.[46] The first provided that the interest rate on money after it is due, which had been the first enumerated item in the subsection, was eight percent "except as provided in (b) of this section."[47] The second maintained the six percent interest rate for the other categories, which were renumbered.[48] A separate 1976 amendment raised the maximum interest rate in subsection (b) from four to five percentage points above the

---

[44]     *See id.*

[45]     *Cf. infra* note 52 (1981 legislative history expressly explaining legislature's recognition that free market rates are preferable to statutory rates).

[46]     Ch. 159, § 1, SLA 1976.

[47]     *Id.*

[48]     *Id.*

Federal Reserve rate.[49]  The rest of subsection (b) remained the same.[50]  Thus the 1976 amendments, including the addition of the phrase "except as provided in (b) of this section," did not change the structure of the usury statute.  The plain meaning of the first sentence of subsection (a) as it existed in 1976 was that the interest rate on money after it is due was eight percent unless a contract specified a different interest rate, in which case subsection (b) applied.

In 1980 the legislature raised the interest rate on money after it is due to 10.5% and deleted the second sentence of subsection (a), resulting in the current version of subsection (a):  "The rate of interest in the state is 10.5 percent a year and no more on

---

[49]     Ch. 110, § 1, SLA 1976.

[50]     *Id.*  In 1976 AS 45.45.010 read in relevant part:

> (a) The rate of interest in the state is eight per cent a year and no more on money after it is due except as provided in (b) of this section.  The rate of interest in the state is six per cent a year and no more on (1) money received to the use of another and retained beyond a reasonable time without the owner's express or implied consent; (2) money due upon the settlement of matured accounts from the day the balance is ascertained; or (3) money due or to become due when there is a contract to pay interest and no rate is specified.

> (b) No interest may be charged by express agreement of the parties in a contract or loan commitment dated after June 4, 1976 which is more than five percentage points above the annual rate charged member banks for advances by the 12th Federal Reserve District that prevailed on the 25th day of the month preceding the commencement of the calendar quarter during which the contract or loan commitment is made.  A contract or loan commitment in which the principal amount exceeds $100,000 is exempt from the limitation of this subsection.

money after it is due except as provided in (b) of this section."[51]  Again nothing in this change evinces an intent to change the structure of AS 45.45.010.  Subsection (b) still exclusively governed contract or loan commitments with express interest rates.

Subsection (b) was amended in 1981, lowering the exemption in the second sentence from $100,000 to the current $25,000, as well as changing the maximum interest rate in the first sentence to fluctuate daily instead of quarterly.[52]  Finally,

---

[51]  Ch. 107, § 2, SLA 1980.

[52]  Ch. 94, § 1, SLA 1981.  The legislative history of the 1981 amendment shows the legislature believed there was no maximum interest rate on loans where the principal exceeded the amount specified in the second sentence of subsection (b), which it was changing from $100,000 to $25,000, and it shows the legislature exempted large loans from the usury statute because it was worried that statutory maximum interest rates would deter lending and harm the Alaska economy.  A "fact sheet" prepared for the House Committee on Labor and Commerce explained that the "purpose" of the amendment was "to reduce the number of loans on which the interest rate is set by law rather than by free market forces":

> At present, the usury statute applies to all loans originated in Alaska under $100,000. . . .
>
> . . . .
>
> If SB 19, as amended, were to become law . . . the usury ceiling would only apply to those loans under $25,000; i.e. those loans between $25,000-$100,000 upon which the interest rate is presently set by law, would be made at whatever the lender and borrower decided was the market rate (essentially the cost of the money to the lender plus a reasonable profit) . . . .

H. Labor & Commerce Comm., Fact Sheet:  SB 19, 12th Leg., 1st Sess., Alaska Leg. Microfiche Collection No. 1778.  The "fact sheet" also explained the "rationale" of the amendment was that "[a]lthough usury ceilings were originally designed to protect borrowers from unduly high interest rates, it is more likely that in today's market, they tend to deny financing to relatively riskier (or smaller) borrowers."  *Id.*  In a Senate

(continued...)

subsection (b) was again amended in 2011, after the promissory note in this case, to make the maximum interest rate in the first sentence the greater of ten percent or five percentage points above the Federal Reserve rate.[53]  The result was the current AS 45.45.010.

This statutory history confirms that the legislature did not intend loans exempt from the limitation of subsection (b) to be governed by the interest rate in subsection (a).  Rather, subsection (b) governs all contract or loan commitments with an express interest rate, and subsection (a) applies only to debts where no interest rate was specified.  Alaska Statute 45.45.010 does not prohibit parties from contracting for any interest rate in contract or loan commitments with a principal exceeding $25,000.

Because the loan in this case was for over $25,000, the 20% annual interest rate was not usurious.  We therefore affirm the superior court's ruling on this point.

**B.  The Superior Court Did Not Abuse Its Discretion When Considering The Coopers' Motion For Reconsideration.**

Alaska Civil Rule 77(k)(1)(i) allows a party to "move the court to

---

[52]    (...continued)
Labor and Commerce Committee hearing the 1981 amendment's sponsor expressed the view that "usury limits, such as the rate and the dollar amount, actually prohibit financing of high-risk enterprises, and certainly in Alaska we have many high-risk enterprises, particularly in our natural resource area."  Comments of Sen. Patrick M. Rodey at 6:13-6:31, Hearing on S.B. 19 Before the S. Labor & Commerce Comm., 12th Leg., 1st Sess. (Feb. 9, 1981), http://www.akleg.gov/ftr/archives/1981/SLAC/CB50C10-SLAC-03-810209.mp3.  And in a House Finance Committee hearing one of his aides explained that limiting usury laws "helps the consumer [because] at times when the cost of the money to the financial institutions is more than is allowable by law, they're just not going to be making the loans."  Comments of Jim Kelly, aide to Sen. Rodey at 45:35-45:49, Hearing on S.B. 19 Before the H. Finance Comm., 12th Leg., 1st Sess. (May 27, 1981), http://www.akleg.gov/ftr/archives/1981/HFIN/97-HFIN-810000.mp3.

[53]    Ch. 29, § 1, SLA 2011.

reconsider a ruling previously decided if, in reaching its decision . . . [t]he court has overlooked, misapplied or failed to consider a statute, decision or principle directly controlling." After the superior court originally ruled in favor of Cox in interpreting the usury statute, the Coopers moved for reconsideration, contending that the superior court

> ha[d] misapplied a statute (AS 45.45.010), ha[d] overlooked or misapplied three Alaska Supreme Court decisions which [were] directly controlling (*Riley v. Northern Commercial Co.*, *Rockstad v. Erikson*, and *Crissey v. Alaska USA Federal Credit Union*) and ha[d] also overlooked or misconceived material facts (the legislative history of AS 45.45.010 and the long standing practice in the industry) in reaching its decision.[54]

The superior court refused to consider any evidence about industry practice in reaching its decision. But the statutory history the Coopers presented convinced the court that it had misapplied AS 45.45.010. The superior court therefore granted the motion for reconsideration.

The superior court did not abuse its discretion. The Coopers argued that the superior court misapplied a statute and the superior court agreed. This falls squarely within Rule 77(k)(1)(i), which envisions a trial court revisiting a ruling that misapplied the law.

Cox argues that the superior court abused its discretion by considering evidence or issues that had not previously been presented before the court. But the court did not consider any new evidence. It expressly disregarded the new factual evidence the Coopers submitted about industry practice and limited its reconsideration to statutory history materials. Statutory history is legal material to be analyzed; it is not evidence of

---

[54] Footnotes omitted.

facts.[55]  And the Coopers did not raise any new legal theories on reconsideration:  they merely provided statutory history because they believed, correctly, that the superior court had made a legal error.

The Coopers' motion for reconsideration and the superior court's ruling on it are exactly what Rule 77(k) is designed to permit.[56]  Trial judges should have the opportunity to review prior rulings and to correct mistakes.  In this case the superior court properly considered the Coopers' arguments, realized its mistake, and corrected it. We affirm the superior court's decisions when considering the motion for reconsideration.

## C.    Rule 82 Governs The Award of Attorney's Fees The Coopers Incurred Defending This Lawsuit.

Alaska Statute 34.20.070 allows for non-judicial foreclosure sales.  The statute also states that a default may be cured at any time before the sale by paying "the sum then in default . . . and attorney and other foreclosure fees and costs actually incurred by the beneficiary and trustee due to the default."[57]  The deed of trust in this

---

[55]     *See Daggett v. Feeney*, 397 P.3d 297, 304 (Alaska 2017) ("Interpretation of a statute is a question of law to which we apply our independent judgment; we interpret the statute according to reason, practicality, and common sense, considering the meaning of the statute's language, its legislative history, and its purpose." (quoting *Adamson v. Municipality of Anchorage*, 333 P.3d 5, 11 (Alaska 2014))); *Kaiser v. Sakata*, 40 P.3d 800, 805 n.15 (Alaska 2002) (describing legislative history as a "legal source for our analysis" of a statute).

[56]     *See In re Adoption of Hannah L.*, 390 P.3d 1153, 1157 (Alaska 2017) ("Rule 77(k)'s limited purpose is 'to remedy mistakes in judicial decision-making where grounds exist, while recognizing the need for a fair and efficient administration of justice.' " (quoting *Magden v. Alaska USA Fed. Credit Union*, 36 P.3d 659, 663 (Alaska 2001))).

[57]     AS 34.20.070(b).

case provided for a foreclosure sale and the deduction of "all costs, fees and expenses of Trustee and of this Trust including cost of evidence of title and reasonable counsel fees in connection with sale." The Coopers included attorney's fees incurred in connection with the foreclosure sale in their offset bid worksheet.

Alaska Civil Rule 82 provides for an award of partial attorney's fees to the prevailing party in a case "[e]xcept as otherwise provided by law or agreed to by the parties."[58] The superior court awarded partial attorney's fees incurred in defending the lawsuit to the Coopers pursuant to Rule 82. Cox contends that this was error. We disagree.

In *Madden v. Alaska Mortgage Group* we addressed the applicability of Rule 82 in litigation about foreclosure sales.[59] In *Madden*, "[t]he Maddens attempted to block [a] foreclosure sale, asserting that Alaska Mortgage had overstated the amount due on its deed of trust . . . . Alaska Mortgage responded by filing a complaint in superior court, seeking to establish the amount owing."[60] At the conclusion of the lawsuit the superior court "awarded full reasonable attorney's fees to Alaska Mortgage, ruling that the award was appropriate as a cost of foreclosure recoverable by the trustee under the express terms of the deed of trust."[61]

We vacated the award.[62] Based on the attorney's fees language in the deed of trust, which was similar to the language in the deed of trust in this case, we determined

---

[58]    Alaska R. Civ. P. 82(a).

[59]    54 P.3d 265, 270-71 (Alaska 2002).

[60]    *Id.* at 267.

[61]    *Id.*

[62]    *Id.* at 271.

that Alaska Mortgage was entitled to full attorney's fees "only insofar as [it] performed duties that would ordinarily be required of the trustee."[63] Since the duties of a trustee usually consist only of the duty "to conduct a fair sale in the event of the trustor's default," and since neither AS 34.20.070 nor the deed of trust "require[d] or authorize[d] the trustee to pursue a legal action to determine the amount owed to the beneficiary," Alaska Mortgage was not entitled to full attorney's fees incurred in connection with its suit.[64] Thus Alaska Mortgage was

> entitled to collect full reasonable attorney's fees under the deed only to the extent that it incurred those fees on behalf of the trustee in connection with arranging the foreclosure sale itself; correspondingly, its right to recover fees incurred in connection with its suit to establish the amount owing on the deed of trust should be determined under Civil Rule 82's provisions allowing partial fees to prevailing parties.[65]

The Coopers adhered to the principle we set out in *Madden*: they sought attorney's fees incurred in connection with the foreclosure sale in their offset bid worksheet, and they separately sought a Rule 82 award for partial fees incurred in defending the lawsuit. The superior court correctly granted the Coopers' motion for Rule 82 attorney's fees incurred in the lawsuit.

Cox attempts to distinguish this case from *Madden*, noting that he brought suit against the Coopers, instead of the other way around. He argues that "[i]n order to proceed in their deed of trust foreclosure the Coopers *did* have a duty to assert their claims and defenses in support of the deed of trust demand." Cox does not identify where he finds this duty. We agree with the Coopers that they "defended against Cox's

---

[63] *Id.* at 270.

[64] *Id.* at 270-71.

[65] *Id.* at 271.

claims not because [they] had some 'duty' to do so under the deed of trust, but because [they] disagreed with the claims Cox asserted in his lawsuit."

Cox also equates the Rule 82 award with a deficiency judgment and notes that by choosing a non-judicial foreclosure the Coopers forfeited their right to a deficiency judgment.[66]  But the Rule 82 fee award was not a deficiency judgment, and it had no bearing on the non-judicial foreclosure.  It was a standard prevailing-party award of attorney's fees.

We affirm the superior court's attorney's fees award.

## V.  CONCLUSION

The superior court's rulings are AFFIRMED in all respects.

---

[66]    *See* AS 34.20.100 ("When a sale is made by a trustee under a deed of trust, as authorized by AS 34.20.070–34.20.130, no other or further action or proceeding may be taken nor judgment entered against the maker or the surety or guarantor of the maker, on the obligation secured by the deed of trust for a deficiency.").  A deficiency judgment is "[a] judgment against a debtor for the unpaid balance of the debt if a foreclosure sale or a sale of repossessed personal property fails to yield the full amount of the debt due." *Judgment*, BLACK'S LAW DICTIONARY (10th ed. 2014).